Jacob Winding, In Pro Per.
6 West Main Street Ste. N.
Stockton, California 95202
Tel. (408) 590-6066

Belinda Smith, In Pro Per.
6 West Main Street Ste. N.
Stockton, California 95202
Tel. (310) 722- 6900

Attorney for Plaintiff
JACOB WINDING, In Pro Per

Attorney for Plaintiff
BELINDA SMITH, In Pro Per

FILED
JAN 18 2024
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY CN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFONRIA

JACOB WINDING and BELINDA SMITH,

Plaintiffs,

vs.

ALLSTATE INSURANCE AND DOES 1 THROUGH 50, Inclusive

Defendants,

Case No.: 2:24-CV-00242-DAD-KJN (PS)

Complaint for Damages an Unlimited Civil Case

1) Fraud
2) Conspiracy to Defraud
3) Breach of Contract
4) Breach of Covenant of Good Faith and Fair Dealings
5) Intentional Infliction of Emotional Distress
6) Declaratory Relief
7) Unfair Competition, in Violation of the UCL
8) Negligent Infliction of Emotional Distress
9) Violated the Unfair Insurance Practices Act (UIPA)

**JURY TRIAL REQUESTED**

**COMES NOW,** Plaintiffs Jacob Winding and Belinda Smith, and alleges as follows:

## PARTIES

1. Plaintiff Jacob Winding at all times herein mentioned was, and is, a resident of the state of California.
2. Plaintiff Belinda Smith at all times herein mentioned was, and is, a resident of the state of California.
3. Plaintiffs (Jacob Winding and Belinda Smith) are informed and believes, on that basis alleges, that Defendant Allstate Insurance Company at all times herein was, and now is, a corporation doing business as an American insurance company whom also operates in Canada, insuring and issuing policies throughout the state of California.
4. Plaintiffs (Jacob Winding and Belinda Smith) are informed and believes, on the basis alleges, that Defendant Allstate Insurance Company headquarters is in Glenview, Illinois (with a Northbrook, Illinois address). The Fortune 500 list company long-running advertising campaign, which been in use since 1950, ask, “Are you in good hands?” and the recognizable logo portrays a suburban-style dwelling cradled protectively in a pair of giant human hands.
5. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as DOES 1 through 50, inclusive, are unknown to plaintiff at this time, who therefore sues said defendants by such fictitious names.
6. Plaintiff is informed and believes and therefore alleges that each of the Defendants designated herein by fictitious name is in some manner responsible for the events and

happenings herein referred to, and caused damages proximately and foreseeably thereby to Plaintiffs as hereinafter alleged.

7. Plaintiffs ask leave of the Court to amend this Complaint upon further discovery.

8. Plaintiffs asks leave of the Court to amend this Complaint when the true names and capacities of Defendants does 1 through 50 have been ascertained.

9. That at all times herein mentioned, each and every Defendant herein was the agent, servant, employee, partner, or joint venture of the other Defendants herein; that at all times, each of said Defendants was acting within the course and scope of said agency, service, employment, partnership and joint venture of Allstate Insurance Company.

## JURISDICTION

10. Pursuant to 28 U.S.C. section 1332, a case in which a citizen of one state sues a citizen of another state or nation and the amount at stake is more than $75,000.00 is a diversity of citizenship case. Federal Court Jurisdiction is applicable under Diversity of citizenship. Defendant Allstate Insurance Company Principal place of business is, 2775 Sanders Road, Northbrook Illinois 60062 which is located in another state.

11. The amount of controversy exceeds the $75,000.00 threshold. Actual damages is estimated is at $125,000.00 (open ended) to repair the real property damage to the family home, $50,000 is estimated in personal property liability damages which does not include attorney fees, counting interest, or court costs.

## STATEMENT OF THE CLAIM

12. Prior to January 19, 2023, Plaintiff Jacob Winding entered into a contract of insurance over the phone in the county of San Joaquin, California with Defendant Allstate Insurance Company representative Daniel Diaz, broker Chad Luitwieler. The insurance contract, hereinafter referred to as "Policy" is titled the Deluxe plus Homeowner policy; policy number 999 703 966 effective date of said Policy July 09, 2022.

13. The applicable policy is attached hereto as **Exhibit** "**A**". In pertinent part, said Policy provides that Defendant would insure and indemnify Plaintiff Jacob Winding from damage to and loss of the property located at 3059 Penelope Drive, Stockton California 95212.

14. Prior to October 20, 2022, Plaintiff Jacob Winding entered into a 2nd contract of insurance over the phone in the country of San Joaquin, California with Defendant Allstate Insurance Company representative Daniel Diaz, broker Chad Luitwieler. The insurance contract, hereinafter referred to as "Umbrella Policy" is titled Umbrella Insurance Policy; policy number 999 703 979.

15. The applicable Umbrella Policy is attached hereto as **Exhibit "B"**. In pertinent part, said Umbrella Policy provides that Defendant would insure and indemnify Plaintiff from damage to and loss of the property located at 3059 Penelope Drive, Stockton California 95212 over and above Plaintiffs Deluxe Plus Homeowners Policy providing additional insurance coverage.

16. Throughout the period of said Policy and Umbrella Policy, Plaintiff Jacob Winding regularly paid premiums and performed each act required on Plaintiff's part to keep said Policy and Umbrella Policy in full force and effect.

17. Plaintiff was informed and upon the belief by Defendant Allstate Daniel Diaz, broker Chad Luitwieler upon the purchase of the Umbrella Policy that if an event or occurrence happened that is covered by the Policy, Plaintiffs Umbrella Policy would cover all excesses costs incurred over and above the Policy.

18. Prior to January 19, 2023, Plaintiff Jacob Winding entered into a 3rd contract of insurance over the phone in the country of San Joaquin, California with Defendant Allstate Insurance Company representative Daniel Diaz, broker Chad Luitwieler . The insurance contract, hereinafter referred to as "California Earthquake Authority policy" is titled CEA Policy; policy number 999 855 896.

19. Plaintiff Jacob Winding intended, relied upon, entrusted, and expected thereby to be assured peace of mind and financial and economic security in the event of destruction or damage to Plaintiff's home located at 3059 Penelope Drive, Stockton California 95212.

20. On January 19, 2023, Plaintiff's property located at 3059 Penelope Drive, Stockton California 95212 was damaged by the winds and hail during the of time the Governor of the State of California declared California as a natural disaster state (declared state of emergency) due to the severity of the weather and its effects on the State.

21. Plaintiff's roof was damaged, solar installed on the roof was damaged and personal property was destroyed when the wind and hail continuously plummeted Plaintiffs home and surrounding personal property located at 3059 Penelope Drive, Stockton California 95212 on or about January 19, 2023.

22. Plaintiff Jacob Winding notified Defendant Allstate Insurance Company of the loss and made a claim for benefits (hereinafter the "Claim"). Under the terms of the Policy and the laws of the State of California, Defendant then became obligated to pay, and Plaintiff

became entitled to receive indemnification for the Claim up to the full value of said loss from Defendant.

23. The adjuster assigned to the property damage claim was Allstate Agent Tyler Herring. The claim was called in to the claims hotline on or about January 19, 2023. Agent Tyler Herring was assigned to the claim but has failed to cure, repair, or fix the damages to the property, as noted in the Allstate Insurance Deluxe homeowner policy.

24. Plaintiff have replacement cost coverage in the Policy.

25. The Policy that Plaintiff and Defendant agreed upon were to be govern by the laws, rules, and regulations of the State of California.

26. Defendant Allstate Claims Adjuster Tyler Herring has denied payment of the claim to cover the damages for the actual repairs in violation of the Unfair Insurance Practices Act (UIPA) among other contract terms in and of the policy agreement.

27. Defendant Allstate failed to reasonably investigate the damage claim and intentionally reduced the payout on the damage claim.

28. Defendant Allstate mailed out a settlement for the windstorm and hail damages in the amount of $1,500.00 only when personal property damage is estimated at $50,000.00 and a licensed contractor estimate of the damages is $150,000.00 to repair the family home.

**29.** Defendant Allstate Claims Adjuster Tyler Herring was in a hurry to close-out the damage claim. Allstate Claims Adjuster Tyler Herring only defined a limited and small portion of the required repairs needed to be completed due to windstorm and hail damage.

**30.** Defendant Allstate Claims Adjuster Tyler Herring excluded coverage for the entire damages to the family home and only paid a portion of the amount estimated for the

damages to the outside structure(building) that the windstorm and hail had removed from its foundation.

**31.** Plaintiff's Policy covers Windstorm and hail damage to the family home and outside building structures on the land. The intentional mistakes of Allstate Claims Adjuster Tyler Herring lack of investigation of the damages to the family has caused my family great harm intrinsic and extrinsic and thus Plaintiff and family has enduring this unnecessary suffrage for over a year now.

**32.** Defendant Allstate Claims Adjuster Tyler Herring's limited scope due to insufficient investigation of the windstorm and hail damage to the family home is currently **being used by Defendant Allstate Insurance Company as the defined scope of work for the damage claim for the property located at 3059 Penelope Drive Stockton Ca. 95212.**

33. Defendant Allstate Claims Adjuster Tyler Herring never provided an explanation as to why no licensed contractor physically examined Plaintiff's roof and or solar expert was consulted on defining of the limited scope of work Defendant Allstate Claims adjuster proposed in the settlement letter.

34. There was no reasonable investigation of the windstorm and hail damage claim to Plaintiffs family home by a knowledgeable, licensed, specialized, or certified person for the damage defined by Defendant Allstate Claims Adjuster Tyler Herring in the settlement letter for Plaintiff's family home located at 3059 Penelope Drive, Stockton Ca. 95212 that could compose and or define the scope of work required to be performed pursuant to the damage on Plaintiff's family home.

35. No further investigation of Plaintiff's home by Defendant Allstate Insurance Company have been accomplished on Plaintiff's family home pursuant to the windstorm and hail damage claim called on or about 01/19/2023.

36. As Defendant Allstate Claim Adjuster Tyler Herring was aided by a second Claim Adjuster name Craig Curtis whom again did not investigate the damages to the homes Damaged roof and Solar system on the roof of Plaintiff's home.

37. Plaintiff, Jacob Winding attempted on several occasions to speak with Allstate's Claim Adjuster Tyler Herring as an attempt to get clarity on Plaintiffs policy coverage and a concise reason as to why only the some portions of the water damage was covered and other areas of the water damage was not covered.

38. Plaintiff called Defendant's Allstate Agent Office whom wrote the Policy and spoke to an Agent in the Chad Lundrick office on about Plaintiff's concerns about Defendant Allstate Claim Adjuster Tyler Herring.

39. On or about 01/25/2023 , Plaintiff contacted licensed construction company that would be will to repair Plaintiff's family home.

40. Plaintiff provided the licensed roofing and solar construction company estimate to Defendants Claims Adjuster Tyler Herring. The estimate provided to Defendant Allstate Insurance Company was a clear scope of the work needed to perform the repairs on the family home.

41. The estimated costs for the repairs submitted to Defendant Allstate Agent Tyler Herring was $125,000.00. The repair cost was open ended due to unforeseen issues with the property.

42. Plaintiff also offered and recommended that Defendant Allstate Claims adjuster Tyler Herring come out to see the roof damage with his own eyes, to the family home located at 3059 Penelope Drive, Stockton Cal 95212 and to meet with the licensed contractor because of the inefficient investigation of Plaintiff's family home.

43. The Defendant Allstate Structural Claims Adjuster Tyler Herring elected not to investigate / walk the roof of the family home but instead issued a letter declining any further investigation and Plaintiff was advised to invoke an appraisal process noted in the insurance policy.

44. Plaintiff advised Defendant Allstate Insurance company that because a Declaration of Emergency was declared by the Governor of the State of California the Appraisal process is not and should not be a requirement for Allstate Insurance Company to comply with, by and through the terms as agreed upon in the Policy contract.

45. Plaintiff's family home repairs have not started as Defendant Allstate has refused to reasonable reimburse Plaintiff fully for reasonable cost to repair Plaintiffs family home.

46. Defendant Allstate has failed and refused to reimburse Plaintiffs for the reasonable cost of related losses and failure and refusal to reimburse Plaintiff in a timely manner for the reasonable cost of repairs pursuant to the Policy.

47. Defendant Allstate has failed and refused to reimburse Plaintiff in a timely manner for the reasonable cost of the additional living expenses and loss of use of the property pursuant to the Policy and Umbrella Policy.

48. Plaintiffs have suffered extremely due to this traumatic event and occurrence of the Defendants prolonged time to cure the windstorm and hail damage at Plaintiffs family home.

**Additional Living Expenses**:

49. Defendant Allstate Insurance Company agent Tyler Herring has refused to acknowledge Plaintiff request for additional living expenses under the Policy as the damage claim was reported to Defendant Allstate Insurance Company on or about January 19, 2023.

50. Defendant Allstate Representative Tyler Herring denied coverage for Plaintiffs Additional living expenses.

**Personal Property Damages**:

51. Defendant Allstate Insurance company Representative Tyler Herring refused Policy coverage of Plaintiff Personal Property claim of $50,000.00 due to the windstorm and hail damage.

52. Plaintiffs have suffered extremely due to this traumatic event and occurrence of the denial of Defendant's Allstate performance to the contract.

53. After performance by Plaintiff, Defendant Allstate has failed to perform pursuant to the contract know as the Policy and Umbrella Policy.

54. Plaintiff has no other recourse but to file this timely complaint for damages and review of declaratory relief pursuant to the contract know as the Policy and Umbrella Policy by this court. As noted in the Insurance Policy, Plaintiff must file the complaint with the court within one year of occurrence and or loose are rights to sue Defendant Allstate under the terms of the Policy.

**First Cause of Action**

(Fraud against Defendant Allstate Insurance Company)

55. Plaintiff incorporates by reference each and every allegation on the Complaint as though set forth in this cause of action.

56. In the Policy, and in oral representations made to Plaintiff by Defendant to Plaintiff, Defendant Allstate representative Daniel Diaz broker Chad Luitwieler would in an event of certain contingencies, pay monies to Plaintiff for indemnification of all losses that occurred pursuant to the Policy and Umbrella Policy with certain exceptions which has no relevant here.

57. Based on Defendants Allstate Insurance Company actual and implied actions:

a. The use of an Unlicensed Allstate representative Tyler Herring to estimate construction costs and damage repair to Plaintiffs family home on or about 01-19-2023.

b. The unreasonable delays in the repairs to Plaintiffs home,

c. The subsequent assignment of this matter to multiple adjusters each of whom failed to investigated Plaintiffs home and investigate Plaintiff home in a timely manner.

d. By not assigning a personal property adjuster to establish Plaintiffs personal property costs.

e. Plaintiff's home repairs have yet to even commence, let alone be completed,

f. Defendant Allstate denial of Additional Living Expenses

g. Defendant Allstate denial of Claim overage for all personal property

h. Defendant Allstate denial of Claim coverage of windstorm and hail damage to Plaintiff family home.

i. Defendant Allstate non- written notice to Plaintiff of a decision of non-renewal of Plaintiffs Policy while Plaintiffs property is still severally damaged.

58. At the time such representations were made by Defendant Allstate insurance company by and though its agents, actions and long standing logo asking "Are you in good Hands", inferring that Defendant Allstate Insurance Company will take care of and honor its contracts (Policy and Umbrella Policy ) with Plaintiff. Defendant Allstate was acting with the intent to deceive and defraud Plaintiff and in bad faith.

59. Defendant Allstate representations made by Daniel Diaz broker Chad Luitwieler directly to Plaintiff were false in that Defendant Allstate did not intend and do not intend to pay such monies, notwithstanding, Plaintiffs entitlement thereto, pursuant to Policy, Umbrella Policy, oral representations and the laws of California as noted in the contracts (Policy and Umbrella Policy ).

60. Plaintiff, at the time of Defendant Allstate representative Daniel diaz broker Chad Luitwieler induced Plaintiff into contracting with Defendant Allstate, was ignorant of Defendants falsity and believed them to be true.

61. Plaintiff reasonably and justifiably relied on Defendant Allstate false representations in view of Defendants superior knowledge and Plaintiff was induced to enter into the Policy and the Umbrella Policy and continued to pay premiums therefore.

62. Had Plaintiff known the true facts, Plaintiff would not have taken such actions as to go into contract with Defendant Allstate Insurance Company.

63. As a direct and proximate result of the aforementioned conduct of Defendant Allstate Insurance Company, Plaintiff has been damaged in the sum of $125,000.00 for home repair and $50,000.00 in personal property to be determined at trial.

64. As a further direct and proximate result of aforementioned conduct of Defendant Allstate, Plaintiff has suffered mental and emotional distress including but not limited to frustration, depression, nervousness and anxiety, and has thereby incurred general damages in a sum of $10 million dollars as to be determine according to proof at time of trial.

65. As further direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has been obliged to expend or incur liability for costs of suit and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

66. As a further direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has suffered special damages in an amount according to proof at the time of trial from the lack of availability of the sum of $125,000.00 to repair Plaintiff home and sum of $50,000.00 to replace Plaintiffs personal property to Plaintiff.

67. Defendant Allstate Insurance Company acts alleged herein were part of Defendants' Allstate, inclusive, ordinary business practice designed to keep from paying Policy and Umbrella Policy benefits which were and are legitimately owed to Plaintiff in order to increase Defendant Allstate's profits.

68. In doing so, and in doing the acts set forth above, the Defendant Allstate Insurance Company acted despicably, willfully and wantonly, oppressively, fraudulently and in conscious disregard of the Plaintiffs rights.

69. Plaintiff therefore seeks exemplary damages in a sum to be set by the jury in an amount sufficient to punish the Defendant and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, Plaintiff prays for judgment against Defendant Allstate.

**Second Cause of Action**

(Conspiracy to Defraud against Defendant Allstate Insurance Company)

70. Plaintiffs incorporate by reference each and every allegation on the Complaint as though set forth in this cause of action.

71. Plaintiff is informed and believes that Defendant Allstate, conspired to defraud Plaintiff as set forth herein.

72. Pursuant to the conspiracy, Defendant Allstate agreed amongst themselves:

a. Claim Adjuster Tyler Herring

b. Claim Adjuster Craig Curtis

c. Broker Chad Luitweiler

d. Broker agent Daniel Diaz

to misrepresent to Plaintiff the terms of the Policy and Umbrella Policy, up sale Plaintiff on Policy coverage, how the claim would be adjusted, how and in what amounts plaintiff would be indemnified, the documentation Defendant Allstate would require in support of Plaintiffs claim, and other matter to be proven at trial.

73. Pursuant to the Policy and Umbrella Policy, Defendant proceeded to commit tortuous acts toward plaintiff, including but not limited to:

a. unreasonably refusing to permit Plaintiff's property to be repaired;

b. unreasonably refusing to accept Plaintiff's documentation of loss;

c. requiring redundant documentation of the Claim;

d. by not accepting meal receipts provided to Defendant for Additional Living Expenses;

e. by adopting an unreasonable and warranted interpretation of the Policy and Umbrella Policy,

f. by denying to provide Additional Living Expenses to Plaintiff,

g. by limiting windstorm and hail damage coverage and denying coverage for all of the damage to Plaintiffs family home

h. by breaching the implied covenant of good faith and fair dealing and

i. Intentionally inflicting emotional distress of Plaintiff.

74. Engaging in a wrongful course of conduct and in committing the wrongful acts and practices alleged herein, Defendant, acted in concert and in civil conspiracy with each other and together, and each conspired with, aided and abetted the other to further Defendant Allstate's own economic interests at the expense of the economic interests, peace of mind and well-being of plaintiff.

75. In engaging in the above-described wrongful course of conduct, Defendant Allstate was aware that Defendant was committing tortuous acts against Plaintiff, and intended to achieve their objective of delaying and under-settling Plaintiff's Claim.

76. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has been damaged in the sum in excess of $125,000.00 to repair Plaintiff home and sum of $50,000.00 to replace Plaintiffs personal property to Plaintiff.

77. The acts alleged were part of Defendant Allstate inclusive, ordinary business practices designed to keep from paying Policy and Umbrella Policy benefits which were and are legitimately owed to the plaintiff in order to increase the Defendants' profits. In doing so, and in doing the acts set forth above, the Defendant Allstate acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of the Plaintiffs rights.

78. Plaintiff therefore seeks exemplary damages in a sum of $5 million dollars to be set by a jury as an amount to punish the Defendant Allstate Insurance Company and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**Third Cause of Action**

(Breach of Contract against Defendant Allstate Insurance Company)

79. Plaintiffs incorporate by reference each and every allegation on the Complaint as though set forth in this cause of action.

80. Defendant Allstate sued in this cause of action entered into a contract (the Policy and Umbrella Policy) to provide insurance to the Plaintiff. This contract of insurance obligated the Defendant Allstate agents to provide the proper amount of insurance to insure against such loss as occurred in the instant case.

81. Plaintiff bought the Policy and Umbrella Policy to insure that all of the property lost and or damaged in such a water damage claim, including the dwelling, and personal property would be replaced in its entirety with no cost or expense to the insured the Plaintiff.

82. Plaintiff has performed all conditions of the Policy and Umbrella Policy required to be performed on Plaintiff's part.

83. Defendant breached the contract (the Policy and Umbrella Policy) with Plaintiff by failing to perform properly and competently the obligations agreed to between the parties as set forth above.

84. Notwithstanding their obligations to do so, Defendant Allstate have failed and refused, and continue to fail and refuse, to pay Plaintiff the benefits owed under the Policy and Umbrella Policy, despite demand therefore.

85. Said failures and refusals include but are not limited to the following:

a. The failure and refusal to abide by the State of California laws, rules and regulations

b. The failure and refusal to reimburse Plaintiff fully for the reasonable cost of repairing the dwelling;

c. The failure and refusal to reimburse Plaintiff for the reasonable cost of repairing or replacing personal property;

d. The failure and refusal to reimburse plaintiff for the reasonable cost of related losses; and

e. The failure and refusal to reimburse Plaintiff in a timely manner for the reasonable cost of the additional living expenses and loss of use of the property.

The said failures and refusals constitute a material breach of the Policy and Umbrella Policy.

86. Defendant Allstate have also breached the contract of insurance by failing to abide by the covenant of good faith and fair dealings. The acts constituting a breach of the implied covenant of good faith and fair dealing are set forth below.

87. As a direct, proximate and consequential result of the above-described breach of contract, Plaintiff has suffered damages under the Policy and Umbrella Policy including loss of contract benefits, anticipated loss of future contract benefits, and loss of interest on money due and owing to Plaintiff, in the amount of $125,000.00 to repair Plaintiff home, $50,000.00 to replace Plaintiffs personal property, court costs, and attorney fees yet to be determined and any amount that is determined according to proof at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Allstate as hereinafter set forth

**Fourth Cause of Action**

(Breach of Covenant of Good Faith and Fair Dealings against Defendant Allstate Insurance Company)

88. Plaintiffs incorporate by reference each and every allegation on the Complaint as though set forth in this cause of action.

89. At all times herein relevant, Defendant Allstate agreed to act in good faith and deal fairly with Plaintiff when they entered into the Policy and Umbrella Policy, accepted premiums from Plaintiff and undertook to process the Claim. Defendant Allstate thereby assumed a special relationship with and fiduciary obligations to, Plaintiff, and agreed to abide by their respective duties. Nevertheless, Defendant Allstate refused and failed to act in good faith and deal fairly with Plaintiff, and breached said obligations, as is set forth more particularly in this complaint.

90. In the absence of a reasonable basis for doing so, and with full knowledge and conscious disregard of the consequences, Defendant Allstate Insurance Company have failed and refused to fully indemnify Plaintiff under the Policy and the laws of the State of California.

91. Defendant Allstate, engaged and continue to engage in a course of conduct to further their own economic interests and in violations of their contractual and fiduciary obligations to Plaintiff including, but not limited to:

a. Misrepresentation of pertinent policy provisions and coverage's at issue;

b. Unreasonable delays in action upon Plaintiff 's Claim;

c. Unreasonable and duplicative requests for documentation of the loss;

d. Unreasonable refusal to accept documentation from Plaintiff as proof of the losses Plaintiff suffered;

e. Unreasonable failure to proceed in good faith to agree upon the reasonable repair methods or cost or repairing Plaintiff's property;

f. Other unlawful claims practices according to proof at the time of trial;

g. Other wrongful and illegal conduct according to proof at trial.

92. Defendant Allstate has continued to engage in the aforementioned acts, and said conduct and bad faith constitutes a continuing tort and continuing bad faith to Plaintiff, causing Plaintiff continuing damage as described herein beyond the date of the filing of this complaint action.

93. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has been damaged in a sum of $5 million dollars as to be determined according to proof at trial of this matter.

94. As a further direct and proximate result of the aforementioned conduct Plaintiff has suffered mental and emotional distress, including, but not limited to , frustration, depression, nervousness and anxiety and had therefore incurred general damages for a total amount to be shown at trial.

95. As further direct and proximate result of the aforementioned conduct of Defendant Plaintiff have suffered special damages resulting from the lost of use and quiet enjoyment of Plaintiffs property and incurred other necessary incidental expenses in an amount not yet fully ascertained, but which will be submitted at time of trial.

96. The acts alleged was part of Defendant Allstate, ordinary business practice designed to keep from paying Policy and Umbrella Policy benefits which were and are legitimately owed to Plaintiff in order to increase Defendants profits. In doing so, and in doing the acts set forth in the complaint Defendant acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of Plaintiffs rights.

97. Plaintiff therefore seeks exemplary damages in a sum of $5 million dollars which is an amount sufficient to punish the Defendants and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## **Fifth Cause of Action**

(Intentional Infliction of Emotional Distress against Defendant Allstate Insurance Company)

98. Plaintiffs incorporate by reference each and every allegation on the Complaint as though set forth in this cause of action.

99. In doing so, Defendant Allstate pursued and outrageous course of conduct, intentionally and recklessly, proximately causing Plaintiff severe emotional distress, shock, and other highly unpleasant emotions.

100. As a result of Defendant's actions, Plaintiff have been forced to live in a house that has not been repaired. Plaintiff have been prevented by Defendant from making necessary repairs to Plaintiffs family home,

101. Plaintiff have been forced to spend hours upon hours meeting with professionals in order to comply with shifting, unreasonable documentation requests by Defendant. As a result of Plaintiff is being forced to find and hire counsel and engage in a protracted dispute with Defendant Allstate who accepted Plaintiffs premium in return for assuring Plaintiff of peace of mind in the event of such a loss.

102. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has been damaged in a sum of $5 million dollars set to be determined according to proof at trial of this matter, and said amount being the amount of the claims necessary to repair all covered damages.

103. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has been mental and emotional distressed, including but not limited to frustration, depression, nervousness and anxiety, and has therefore incurred general damaged in a sum according to proof at trial of this matter.

104. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has been obliged to incur liability for costs of suit and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

105. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has suffered special damages in an amount according to proof at the time of trial from the lack of availability of said sums to fix and or repair Plaintiff family home.

106. The acts alleged in this complaint were part of Defendants ordinary business practices designed to keep from paying Policy benefits which were and are legitimately owed to the Plaintiff in order to increase the Defendants profits. In doing so and in doing the acts set forth in this complaint, Defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of Plaintiffs rights.

107. Plaintiff therefore seeks exemplary damages in a sum of $5 million dollars which is an amount sufficient to punish the Defendants and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

**Sixth Cause of Action**

(Declaratory Relief against Defendant Allstate Insurance Company)

108. Plaintiffs incorporate by reference each and every allegation on the Complaint as though set forth in this cause of action

109. The controversy arises out of Plaintiff claim for coverage against loss and damage sustained to Plaintiff Family home insured by Policy and Umbrella Policy with Defendant Allstate.

110. Defendant Allstate Insurance Company has denied Plaintiff full coverage of windstorm and hail damage claim pursuant the Policy.

111. Defendant Allstate has denied Additional Living Expense coverage for an insured claim pursuant to the Policy and Umbrella Policy.

112. Defendant Allstate has denied Personal Property damage coverage for an insured claim pursuant to the Policy and Umbrella Policy.

113. Policy terms and Clarifications of Policy terms as to Defendant Allstate duties and obligations under the terms of the Policy and Umbrella Policy with regards to the claim is required by the court.

114. The date of loss here is on or about January 19, 2023. As of today's date work on Plaintiffs home has yet to even commence, let alone be completed. The reason for this delay appears to be Defendant Allstates' past efforts to "low ball" the repairs being the first officer was $1,500.00. However Plaintiff own efforts reveal that the repairs will cost in excess of $125,000.00 for Plaintiff's home of more than 5 years and Personal Property damage in the amount of $50,000.00.

115. Plaintiff purchase Additional Living Expense with the understanding that Defendant Allstate would reasonably and timely effectuate availability of, again, reasonable funding for said repairs. Using the Terms of Defendant's written Policy, Defendant Allstate is to use "due diligence and dispatch" with regard to the repairs to Plaintiff's family home. It has now been approximately one (1) year since the loss and claim and repairs have not even started. Defendant has failed to use due diligence and dispatch.

116. It is clear that Defendant Allstate Insurance Company understands this claim to be a covered loss. What is not clear is why it is taking so long to effectuate the home repairs.

117. Plaintiff seeks confirmation from the court as to the Additional Protection clause in the Policy and Umbrella Policy affords coverage for the time period required to repair and or replace Plaintiff family home.

118. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has been obliged to incur liability for costs of housing, suit and related

expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

119. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has suffered special damages in an amount according to proof at the time of trial from the lack of availability of said sums to fix and or repair Plaintiff family home.

120. The acts alleged in this complaint were part of Defendants ordinary business practices designed to keep from paying Policy benefits which were and are legitimately owed to the Plaintiff in order to increase the Defendants profits. In doing so and in doing the acts set forth in this complaint, Defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of Plaintiffs rights.

121. Plaintiff therefore seeks exemplary damages in a sum of $5 million dollars which is an amount sufficient to punish the Defendants and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## **Seventh Cause of Action**

(Unfair Competition, in Violation of the UCL against Defendant Allstate Insurance Company)

122. Plaintiffs incorporate by reference each and every allegation on the Complaint as though set forth in this cause of action

123. Defendant Allstate advertises to policyholders in the United States and Canada with a logo and slogan asking the questions “Are you in good hands” while having a recognizable logo portraying a suburban-stlye dwelling cradled protectively in a pair of giant human hands deceptively mis-leading the public and policyholders such as Plaintiff

to contract with Defendant for policy services to insure one of their most expense and prize processions there family home with Defendant Allstate company.

124. Plaintiff was defrauded and mislead as to contract with Defendant Allstate in reliance of its advertising to the public and reliance on Defendant Allstate fraudulent representation of material facts as to Plaintiffs Policy and Umbrella Policy.

125. At all times relevant, Defendant Allstate knew that Plaintiff would be relying upon the accuracy, competence, good faith and expertise of Defendants in adjusting Plaintiff's Claim and in advising Plaintiff of coverage under the Policy, and as such Defendant Allstate was under a duty to Plaintiff to act truthfully, lawfully, fairly, competently, promptly, and in the highest good faith.

126. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has suffered special damages in an amount according to proof at the time of trial from the lack of availability of said sums to fix and or repair Plaintiff family home.

127. The acts alleged in this complaint were part of Defendants ordinary business practices designed to keep from paying Policy benefits which were and are legitimately owed to the Plaintiff in order to increase the Defendants profits. In doing so and in doing the acts set forth in this complaint, Defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of Plaintiffs rights.

128. Plaintiff therefore seeks exemplary damages in a sum of $5 million dollars which is an amount sufficient to punish the Defendants and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## Eighth Cause of Action

(Negligent Infliction of Emotional Distress against Defendant Allstate Insurance Company)

129. Plaintiffs incorporate by reference each and every allegation on the Complaint as though set forth in this cause of action

130. At all time relevant Defendant breached his duty to Plaintiff and as a direct proximate result of the negligence plaintiff has sustained damages for the denial of indemnification benefits under the Policy and Umbrella Policy.

a. Negligently failing to adjust Plaintiff's Claim, at all times relevant to this action

b. Negligently failing to properly advise and inform Plaintiff of all necessary repairs and related obligations;

c. Negligently failing to reasonably investigate and process Plaintiffs claim.

131. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has suffered special damages in an amount according to proof at the time of trial from the lack of availability of said sums to fix and or repair Plaintiff family home.

132. The acts alleged in this complaint were part of Defendants ordinary business practices designed to keep from paying Policy benefits which were and are legitimately owed to the Plaintiff in order to increase the Defendants profits. In doing so and in doing the acts set forth in this complaint, Defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of Plaintiffs rights.

133. Plaintiff therefore seeks exemplary damages in a sum of $5 million dollars which is an amount sufficient to punish the Defendants and to be certain that they never again perpetrate such evils upon Policyholders.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

**Ninth Cause of Action**

(Violated the Unfair Insurance Practices Act (UIPA) against Defendant Allstate Insurance Company)

134. Plaintiffs incorporate by reference each and every allegation on the Complaint as though set forth in this cause of action

135. Defendants bias investigation and or failure to conduct a thorough investigation violated the Unfair Insurance Practice Act.

136. As a direct and proximate result of the aforementioned conduct of Defendant Allstate, Plaintiff has suffered special damages in an amount according to proof at the time of trial from the lack of availability of said sums to fix and or repair Plaintiff family home.

137. The acts alleged in this complaint were part of Defendants ordinary business practices designed to keep from paying Policy benefits which were and are legitimately owed to the Plaintiff in order to increase the Defendants profits. In doing so and in doing the acts set forth in this complaint, Defendants acted despicably, willfully, wantonly, oppressively, fraudulently and in conscious disregard of Plaintiffs rights.

138. Plaintiff therefore seeks exemplary damages in a sum of $5 million dollars which is an amount sufficient to punish the Defendants and to be certain that they never again perpetrate such evils upon Policyholders.

**RELIEF**

**WHEREFORE**: Plaintiff prays judgment against Defendants as follows:

1. For damages for failure to provide benefits under the policy, plus interest, and other economic and consequential damages, according to proof;
2. For general damages for losses resulting from mental and emotional distress according to proof at trial;
3. For exemplary damages in the amount of $5 million for each cause of action;
4. For Compensatory damages in the amount noted above $125,000.00 for real property damage and $50,000.00 for personal property.
5. For costs of suit incurred herein;
6. For attorney fees incurred to obtain policy benefits according to proof at trial;
7. For such other and further relief as the Court deems just and proper.

DATED: January 18, 20234

,

Respectfully Submitted

Jacob Winding, In Pro Per

DATED: January 18, 2024

,

Respectfully Submitted

Belinda Smith, In Pro Per

# EXHIBIT A

 *La Habra Ins Agency*
*3920 Prospect Ste G*
*Yorba Linda CA 92886-1761*

Information as of July 9, 2022
Policyholder(s)
**Jacob Winding**
Policy number
**999 703 966**

Your Allstate agency is
**La Habra Ins Agency**
(714) 792-0887

JACOB WINDING
3059 PENELOPE DR
STOCKTON CA 95212-3541

## Thanks for Choosing Allstate—We're Happy to Have You with Us!

### Here's your insurance policy

We're happy you're extending your relationship with us. We truly value and appreciate your business. Along with your new Deluxe Plus Homeowners policy, we've included a guide to what's in this package and answers to some common questions.

### You qualify for a Home and Auto Discount!

We're happy to pass along the great news that you now qualify for our Home and Auto Discount. Keep in mind that each time you purchase an additional Allstate policy, your discount could get even bigger! Besides the savings, you're also enjoying the convenience of working with the same, experienced team on all of your Allstate policies.

### How to contact us

Please give your Allstate Agent a call at (714) 792-0887 if you have any questions. It's our job to make sure you're in good hands.

Sincerely,

Thomas J. Wilson
President, Allstate Insurance Company

NP209



Policy number: **999 703 966**
Policy effective date: July 9, 2022

## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

- ☐ **What's in this package?**
  See the guide below for the documents that are included. ***Next steps:*** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

- ☐ **Am I getting all the discounts I should?**
  Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

- ☐ **What about my bill?**
  Unless you've already paid your premium in full, we'll send your bill separately. ***Next steps:*** please pay the minimum amount by the due date listed on it.

  You can also pay your bill online at Allstate.com/support or through the Allstate mobile app. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule. Para español, llamar al 1-800-979-4285.

- ☐ **What if I have questions?**
  Visit Allstate.com/support to browse our list of frequently asked questions and find information regarding billing or policy documents. You can also create an online account to access and manage your policies. Para español, llamar al 1-800-979-4285.

## A guide to your welcome package

**Policy Declarations***
The Policy Declarations lists policy details, such as your property details and coverages.

**Policy**
Your policy is your insurance contract; it lists all of the terms and conditions of your coverage.

**Policy Endorsements**
If changes are made to your policy, these documents will include your new contract language.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.

**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features: www.allstate.com/madesimple Espanol.allstate.com/facildeentender

***** ***To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.***

010 070 054
220711S007555
PROR24CA20220712000094801A-000097-001-0-02-00

Policy number: 999 703 966
Policy effective date: July 9, 2022

# Important Privacy Choices For Consumers

**You have the right to control whether we share some of your personal information.**
**Please read the following information carefully before you make your choices below.**

## Your Rights

You have the following rights to restrict the sharing of personal and financial information with our affiliates (companies we own or control) and outside companies that we do business with. Nothing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us. This includes sending you information about some other products or services.

## Your Choices

**Restrict Information Sharing With Companies We Own or Control (Affiliates):**
Unless you say "No," we may share personal and financial information about you with our affiliated companies.

☐ NO, please do not share personal and financial information with your affiliated companies.

**Restrict Information Sharing With Other Companies We Do Business With To Provide Financial Products And Services:**
Unless you say "No," we may share personal and financial information about you with outside companies we contract with to provide financial products and services to you.

☐ NO, please do not share personal and financial information with outside companies you contract with to provide financial products and services.

## Time Sensitive Reply

You may make your privacy choice(s) at any time. Your choice(s) marked here will remain unless you state otherwise. If you already asked us not to share your personal and financial information, you do not need to complete this form again. However, if we do not hear from you we may share some of your information with affiliated companies and other companies with whom we have contracts to provide products and services.

**TO USE THIS FORM, PLEASE PROVIDE ALL OF THE FOLLOWING INFORMATION TO ALLOW US TO PROCESS YOUR REQUEST:**

Name: Jacob Winding

ACCOUNT OR POLICY NUMBER(S): **999 703 966**

Signature: ______________________________

To exercise your choices do one of the following:

(1) Call our toll-free number 1-800-856-2518;

(2) Fax our toll-free number 1-855-219-7425; or

(3) Fill out, sign and send back this form to us using the envelope provided (you may want to make a copy for your records).

**X73499v2**



010 070 054
2207115007555
PROR24CA2022071200094801A-000097-002-0-02-00

Policy number: 999 703 966
Policy effective date: July 9, 2022

# Privacy Policy Statement

Thank you for choosing Allstate. We value you, respect your privacy and work hard to protect your personal information.

This statement is provided on behalf of Allstate Insurance Company and the affiliates ("Allstate") listed at the end of this notice. We would like to explain how we collect, use and share the information we obtain about you in the course of doing business.

## Our Privacy Assurance

- We do not sell your personal or medical information to anyone.
- We do not share your information with non-affiliate companies that would use it to contact you about their own products and services, unless permitted pursuant to a joint marketing agreement.
- We require persons or organizations that represent or assist us in servicing your policy and claims to keep your information confidential.
- We require our employees to protect your personal information and keep it confidential.

As you can see, protecting your personal information is important to us. In addition to the practices described above, we use a variety of physical, technical and administrative security measures that help to safeguard your information. For Social Security Numbers (SSN), this includes restricting access to our employees, agents and others who use your SSN only as permitted by law: to comply with the law, to provide you with products and services, and to handle your claims. Also, our employees' and agents' access to and use of your SSN are limited by the law, our policies and standards, and our written agreements.

Our privacy practices continue to apply to your information even if you cease to be an Allstate customer.

## What Personal Information Do We Have and Where Do We Get It

We gather personal information from you and from outside sources for business purposes. Some examples of the information we collect from you may include your name, phone number, home and e-mail addresses, driver's license number, social security number, marital status, family member information and healthcare information. Also, we maintain records that include, but are not limited to, policy coverages, premiums, and payment history. We also collect information from outside sources that may include, but is not limited to, your driving record, claims history, medical information and credit information.

In addition, Allstate and its business partners gather information through Internet activity, which may include, for example, your operating system, links you used to visit allstate.com, web pages you viewed while visiting our site or applications, Internet Protocol (IP) addresses, and cookies. We use cookies, analytics and other technologies to help:

- Evaluate our marketing campaigns
- Analyze how customers use our website and applications
- Develop new services
- Know how many visitors have seen or clicked on our ads

Also, our business partners assist us with monitoring information including, but not limited to, IP addresses, domain names and browser data, which can help us to better understand how visitors use allstate.com.

## How We Use and Share Your Personal Information

In the course of normal business activities, we use and share your personal information. We may provide your information to persons or organizations within and outside of Allstate. This would be done as required or permitted by law. For example, we may do this to:

- Fulfill a transaction you requested or service your policy
- Market our products
- Handle your claim
- Prevent fraud
- Comply with requests from regulatory and law enforcement authorities
- Participate in insurance support organizations

The persons or organizations with whom we may share your personal information may include, among others:

- Your agent, broker or Allstate-affiliated companies
- Companies that perform services, such as marketing, credit card processing, and performing communication services on our behalf
- Business partners that assist us with tracking how visitors use allstate.com.
- Other financial institutions with whom we have a joint marketing agreement
- Other insurance companies that play a role in an insurance transaction with you
- Independent claims adjusters
- A business or businesses that conduct actuarial or research studies
- Those who request information pursuant to a subpoena or court order
- Repair shops and recommended claims vendors

## The Internet and Your Information Security

We use cookies, analytics and other technologies to help us provide users with better service and a more customized web



Policy number: 999 703 966
Policy effective date: July 9, 2022

experience. Additionally, our business partners use tracking services, analytics and other technologies to monitor visits to allstate.com. The website may also use Web beacons (also called "clear GIFs" or "pixel tags") in conjunction with cookies. If you prefer, you can choose to not accept cookies by changing the settings on your web browser. Also, if you would like to learn about how we gather and protect your information over the Internet, please see our online privacy statement located at the bottom of the allstate.com homepage.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the web site.

This includes, for example, information regarding:

1) how we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
2) who should use our web site;
3) the security of information over the Internet; and
4) links and co-branded sites.

## How You Can Review and Correct Your Personal Information

You can request to review your personal information contained in our records at any time. To do this, please send a letter to the address below requesting to see your information for the previous two years. If you believe that our information is incomplete or inaccurate, you can request that we correct it. Please note we may not be able to provide information relating to investigations, claims, litigation, and other matters. We will be happy to make corrections whenever possible.

Please send requests to:
Allstate Insurance Company Customer Privacy Inquiries
PO Box 660598
Dallas, TX 75266-0598

## Sharing Personal Information: Privacy Choices for California Customers

Unless you request otherwise, we may share your personal information with one or more Allstate affiliates. We may do this for a number of reasons, including making you aware of the different products, services and offers they can provide. Similarly, unless you request otherwise, we may share your personal information with outside companies with which we have a written agreement to jointly offer you products and services that we believe may be of interest to you.

You have the right to limit some sharing of your personal information by reviewing and completing an "Important Privacy Choices for Consumers" form. We've enclosed this form unless you previously opted to limit some sharing of your personal information. Please keep in mind that regardless of your choices, Allstate may share your personal information with its affiliates, outside companies and other entities to comply with the law, provide you with the best service on your Allstate accounts, or as otherwise permitted by law.

## We Appreciate Your Business

Thank you for choosing Allstate. We understand your concerns about privacy and confidentiality, and we hope this notice has been helpful to you. We value our relationship with you and look forward to keeping you in Good Hands®.

If you have questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-ALLSTATE.

We reserve the right to change our Privacy practices, procedures, and terms.

Allstate Insurance Company

**Allstate affiliates to which this notice applies:** Allstate County Mutual Insurance Company, Allstate Finance Company, Allstate Financial Services, LLC (LSA Securities in LA and PA), Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Investment Management Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, Allstate Motor Club, Inc., Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company , Allstate Northbrook Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Texas Lloyd's, Allstate Texas Lloyd's, Inc., Allstate Vehicle and Property Insurance Company, Deerbrook General Agency, Inc., Deerbrook Insurance Company, Lincoln Benefit Life Company, North Light Specialty Insurance Company.

Please Note: Allstate affiliates American Heritage Life Insurance Company, Castle Key Insurance Company and Castle Key Indemnity Company participate in information sharing with the affiliates listed above, but have a separate privacy notice for their customers.

(ed. 2/11/2014)

**X73497-1**

010 070054
220711S007555
PROR24CA2022071200094801A-000097-003-0-02-00

# Deluxe Plus Homeowners Policy Declarations

Your policy effective date is July 9, 2022

## Total Premium for the Premium Period (Your bill will be mailed separately)

| Premium for property insured | $1,209.89 |
|---|---|
| **Total** | **$1,209.89** |

***Your bill will be mailed separately. Before making a payment, please refer to your latest bill, which includes payment options and installment fee information. If you do not pay in full, you will be charged an installment fee(s).***

*See the **Important Payment and Coverage Information** section for details about installment fees.*

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | **$37.00** | 55 and Retired | **$75.00** |
| Claim Free | **$211.00** | Home and Auto | **$134.00** |
| **Total discount savings** | | | **$457.00** |

## Location of property insured

3059 Penelope Dr, Stockton, CA 95212-3541

## Rating Information

Please refer to the Important Notice (X73944) for additional coverage information, and estimated replacement costs for Coverage A and B. Please review and verify the information regarding your insured property. Contact us if you have any changes.

The dwelling is of frame construction

**Dwelling Style:**
Built in 2004; 1 family; 2905 sq. ft.

**Fire protection details:**
Fire department subscription - no    1 mile to fire department

**Wildfire Risk Group:**
006

## Mortgagee

None

## Additional Interested Party

None

Information as of July 9, 2022

## Summary

Named Insured(s)
**Jacob Winding**

Mailing address
**3059 Penelope Dr**
**Stockton CA 95212-3541**

Policy number
**999 703 966**

Your policy provided by
**Allstate Insurance Company**

Policy period
Begins on **July 9, 2022** through **July 9, 2023** at 12:01 a.m. Pacific Time, and continues until cancelled

Premium period
Beginning **July 9, 2022** through **July 9, 2023** at 12:01 a.m. Pacific Time

Your Allstate agency is
**La Habra Ins Agency**
3920 Prospect Ste G
Yorba Linda CA 92886-1761
(714) 792-0887

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

CA070NBD



Deluxe Plus Homeowners Policy Declarations
Policy number: 999 703 966
Policy effective date: July 9, 2022

## Coverage detail for the property insured

| *Coverage* | *Limits of Liability* | *Applicable Deductible(s)* |
|---|---|---|
| Dwelling Protection - with Building Structure Reimbursement Extended Limits*<br>*150% of the Limit of Liability applicable to the building structure(s) for Dwelling Protection | $707,574 | • $1,500 Wildfire<br>• $1,500 All other perils |
| Other Structures Protection | $70,758 | • $1,500 Wildfire<br>• $1,500 All other perils |
| Personal Property Protection - Reimbursement Provision | $530,681 | • $1,500 Wildfire<br>• $1,500 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $247,651 | |
| Family Liability Protection | $300,000 each occurrence | |
| Guest Medical Protection | $5,000 each person | |
| Building Codes | $70,758 | |
| Workers' Compensation and Employers' Liability Coverage for Residence Employees | Statutory/See Form | |

▶ ***Other Coverages Not Purchased:***

- Business Property Protection*
- Business Pursuits*
- Cellular Communication System*
- Electronic Data Processing Equipment*
- Extended Coverage on Cameras*
- Extended Coverage on Jewelry, Watches and Furs*
- Extended Coverage on Musical Instruments*
- Extended Coverage on Sports Equipment*
- Fire Department Charges*
- Golf Cart*
- Home Day Care*
- Incidental Office, Private School Or Studio*
- Increased Coverage on Money*
- Increased Coverage on Securities*
- Increased Silverware Theft Limit*
- Loss Assessments*
- Satellite Dish Antennas*

***** ***This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.***

*The limit of liability for this structure (Coverage A-Dwelling Protection) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.*

*This policy does not cover earth movement including earthquake.*

*You have elected not to purchase a CEA earthquake policy.*

## Scheduled Personal Property Coverage

***Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.***

CA070NBD
010 070054
220711S007555
PROR24CA2022071200094801A-000097-004-0-02-00

Deluxe Plus Homeowners Policy Declarations
Policy number: 999 703 966
Policy effective date: July 9, 2022

Allstate

## Your policy documents

Your Homeowners policy consists of the Policy Declarations and the following documents. Please keep them together.

- Deluxe Plus Homeowners Policy - AP337
- Amendment of Policy Provisions - AP425
- California Standard Fire Policy Provisions - AP1862-2
- Marijuana Amendatory Endorsement - AVP504
- California Paperless Disclosure - AU14943
- California Deluxe Plus Homeowners Amendatory Endorsement - AP4486-4
- Building Structure Reimbursement Extended Limits Endorsement - AP445
- Wildfire Deductible Endorsement - AP4886
- California Workers' Compensation And Employers' Liability Coverage For Residence Employees Coverage Form - AP1127

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

- This policy provides building code upgrade coverage for the increased costs of repairing or replacing damage to the insured dwelling caused by a covered loss because of building ordinances or laws regulating the repair or replacement. Building code upgrade coverage is provided based on the increased costs associated with building ordinances or laws in effect at the time of loss or rebuilding, up to the policy limits for this coverage.
- The Property Insurance Adjustment condition applies using the Marshall Swift Boeckh Publications building cost index.
- Please note: This is not a request for payment. Any adjustments to your premium will be reflected on your next scheduled bill which will be mailed separately.
- If you decide to pay your premium in installments, there will be a $3.50 installment fee charge for each payment due. If you make 12 installment payments during the policy period, and do not change your payment plan method, then the total amount of installment fees during the policy period will be $42.00.

  If you are on the Allstate® Easy Pay Plan, there will be a $1.00 installment fee charge for each payment due. If you make 12 installment payments during the policy period, and remain on the Allstate® Easy Pay Plan, then the total amount of installment fees during the policy period will be $12.00.

  If you change payment plan methods or make additional payments, your installment fee charge for each payment due and the total amount of installment fees during the policy period may change or even increase.

  Please note that the Allstate® Easy Pay Plan allows you to have your insurance payments automatically deducted from your checking or savings account.

**Allstate Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

Thomas J. Wilson
President

Susan L. Lees
Secretary

CA070NBD

# Important notices

Policy number: 999 703 966
Policy effective date: July 9, 2022

## Dwelling Profile

Thank you for being an Allstate customer. For your convenience, we're providing you the following information about the estimated cost to replace your home and your related Dwelling Protection-Coverage A liability limits. We are also providing you the following information about the estimated cost to replace other structures on your property, including, but not limited to sheds, guest/granny homes and swimming pools and your related Other Structures Protection-Coverage B liability limits. Please review and let us know if you have any questions or concerns.

### Your Dwelling Protection-Coverage A Liability Limits

The decision regarding the limit amount applicable to your Dwelling Protection-Coverage A is your decision to make, as long as, at a minimum, you purchase a Coverage A limit equal to the estimated cost as determined by Allstate and do not exceed maximum coverage limitations established by Allstate (we will let you know if the amount of insurance that you request is greater than that which we allow).

It is important to keep in mind that the minimum Coverage A limit for which we will insure your property reflects an estimated replacement cost based on selected data that was available to us when we made this estimate (see below). The actual amount it will cost to replace your covered property cannot be known until after a covered total loss has occurred, so it is important that you let us know now, before a covered total loss occurs, if you would like to change your Coverage A limit. Allstate does not warrant the adequacy of the estimate to cover any future loss(es).

### Your Other Structures Protection-Coverage B Liability Limits

The enclosed Policy Declarations shows the liability limits that are applicable to Other Structures Protection-Coverage B of your homeowners insurance policy. Your Coverage B limits reflect our estimated replacement cost, which is based on data that was available to us when we made this estimate. Please keep in mind that one cannot know the actual amount it will cost to replace your other structures until after a covered total loss has occurred.

As an Allstate policyholder, you decide the liability limits that are applicable to your Other Structures-Coverage B. We require that your limits, at a minimum, equal 10% of the Dwelling Protection Coverage A liability limits. Allstate does not warrant the adequacy of the estimate to cover any future loss(es).

### How Is The Replacement Cost Estimated?

Many factors can affect the cost to replace your property, or other structures, including age, size, and type of construction. The estimated replacement cost uses construction data, such as labor and materials cost, that are available to us at the time we make an estimate. This estimate is also based on characteristics of the property, which include information that you provided to us. Please note that if you have chosen to insure your dwelling for a limit that is greater than our estimate (which is the minimum amount for which we insure your dwelling), the amount shown below actually reflects this higher amount. If you would like to make any changes to the Coverage A limit, please contact us.

### Note To Customers Renewing Their Policy

The estimated replacement cost for your property, or other structures, may have changed since your last renewal. This is because Allstate uses the property characteristics that you have provided to us to recalculate and update the estimated replacement cost. Using updated labor and material rates for your zip code, Allstate takes the property characteristics that you have provided and determines the updated estimated replacement cost.

**Please note: Your Dwelling information is used to estimate your home replacement cost. It's important to review and update this information so we're using the most accurate details to estimate your home's replacement value.**

If the information about your property, or other structures, shown in this document requires any change or if you have any questions or concerns about the information contained in this Important Notice, please contact your Allstate representative, or call us at 1-800-ALLSTATE®.

010 070 054
220711S007555
PROR24CA20220712000948 01A-000097-005-0-02-00

## General Information

Provided by: Allstate

Prepared by: CoreLogic®, Inc.

Estimate Date: 07/09/2022

Applicant/Named Insured: Jacob Winding

Policy Number: 999 703 966

Policy Effective Date: July 9, 2022

Property Address: 3059 Penelope Dr, Stockton, CA, 95212-3541

## Valuation Totals Summary

Disclaimer: Certain information contained within this Important Notice regarding your property was obtained from CoreLogic®, Inc. You can contact us for a full copy of the CoreLogic®, Inc. report, reflecting the dwelling characteristics utilized for purposes of the estimate.

| | **Estimate** | **Selected Limits of Liability** | Cost Data As Of 05/01/2022 |
|---|---|---|---|
| **Dwelling and Attached Structures Estimate-Coverage A** (includes Dwelling and Attached Structures) | | | |
| **Reconstruction Cost w/ Debris Removal** | $707,574 | $707,574 | |
| **Other Structures Protection-Coverage B** (includes Detached Structure) | | | |
| **Reconstruction Cost w/ Debris Removal** | | $70,758 | |

The estimated replacement cost of your home is the minimum amount for which we will insure your home. The estimate includes the following costs:

- Labor, Materials and Supplies: $519,811
- Demolition and Debris Removal: $27,719
- Contractors Overhead and Profit: $113,309
- Permits and Architects Plans including General Conditions: $46,735

These components display to the dollar.

## Building Description

### Main Home

Year Built: 2004

Number of Families: 1 family

Number of Stories: 2 stories

Foundation: Slab at Grade, 100%

Degree of Slope: 0-15 Degrees
Assumptions based on your foundation type.

Wall Height: 8 ft., 100%



*Finished Living Area: 2,905

*Total Living Area: 2,905

Construction Type: Standard

Site Access: Flat Area/Easy Access Roads

Perimeter Shape: Rectangular Or Slightly Irregular

*Finished Living Area (FLA) is the total finished floor area of the main home or section. It does not include any built-in garage area and any finished basement area, or bi-level unfinished lower level area. Finished Living Area is used to calculate the Total Living Area (TLA). The Total Living Area is the size of the main home plus each section/wing being entered (in square feet) based upon the exterior dimensions of the home.

## Materials

Assumptions are based on the age, style, and location of your home unless specified by the customer.

**Foundation**

| | | |
|---|---|---|
| • Materials | Concrete | 100% |
| • Details | Slab at Grade | 100% |

**Exterior Walls**

| | | |
|---|---|---|
| • Framing | Wood Trusses & Sheathing<br>Stud, 2" X 4" | 100%<br>100% |
| • Exterior Frame Walls | Stucco on frame<br>Stone On Frame | 80%<br>20% |
| • Wall Specialties | N/A | |

**Roof**

| | | |
|---|---|---|
| • Roof Style/Slope | Gable, Slight Pitch | 100% |
| • Roof Shape | Simple/Standard | 100% |
| • Roof Cover | Clay tile | 100% |

**Exterior Features**

| | | |
|---|---|---|
| • Windows | Sash, Vinyl with Glass | 100% |
| • Exterior Doors | Door, Wood, Exterior | 2 |

**Partition Walls**

| | | |
|---|---|---|
| • Interior Wall Framing | Stud, 2" X 4" | 100% |
| • Partitions | Drywall - Textured | 100% |
| • Wall Coverings | Paint<br>Vinyl Wallpaper | 95%<br>5% |
| • Partition Specialties | N/A | |

**Ceiling Finish**

| | | |
|---|---|---|
| • Ceilings | Wood Joists & Sheathing<br>Drywall | 100%<br>100% |

**Floor Finish**

| | | |
|---|---|---|
| • Floor Cover | Hardwood<br>Wall to Wall Carpet (acrylic/nylon)<br>Vinyl<br>Ceramic Tile | 16%<br>74%<br>5%<br>5% |

**Interior Doors**

| | | |
|---|---|---|
| • Details | Door, Hollow Core, Birch | 18 |

**Kitchens**

| | | |
|---|---|---|
| • Details | Kitchen - semi-custom | 1 |

**Bathrooms**

| | | |
|---|---|---|
| • Details | Full bath - Builders Grade<br>Half Bath - Builders Grade | 2<br>1 |

**Superstructure / Framing**

| | | |
|---|---|---|
| • Floor / Ceiling Structure | N/A | |
| • Roof Structure | N/A | |

**Whole House Systems**

| | | |
|---|---|---|
| • Electrical | 200 Amp Service, Standard | 100% |
| • Fire & Burglar Protection | Interior Sprinkler Systems | 100% |

**Garages & Carports**

| | | |
|---|---|---|
| • Details | Attached Garage, 3 Car | 1 |

**Attached Structures**

| | | |
|---|---|---|
| • Details | N/A | |

**Detached Structures**

| | | |
|---|---|---|
| • Outbuildings | None Reported | |
| • Pools & Sports | None Reported | |
| • Walls & Fences | None Reported | |
| • Sitework | None Reported | |

010 070 C54
220711S007555
PROR24CA20220712D00948D1A-000097-D06-0-02-00

Important notices
Policy number: 999 703 966
Policy effective date: July 9, 2022

Page 4 of 4

**Heating & Cooling**

| | | |
|---|---|---|
| • Air Conditioning | Central Air Conditioning, HE, Same Ducts | 100% |
| • Heating | Heating - gas | 100% |
| • Heating & AC Specialties | Whole House Fan (Attic Fan) | 1 |

**Interior Features**

| | | |
|---|---|---|
| • Fireplaces | Fireplace - gas | 1 |
| • Electrical Specialties | N/A | |
| • Staircases | Staircase, Straight, Softwood | 1 |
| • Miscellaneous | N/A | |

X73944



**ALLSTATE INSURANCE COMPANY**

# Deluxe Plus Homeowners Policy

**CALIFORNIA** AP337

Policy number
**999 703 966**

Policy effective
**July 9, 2022**

Policyholders
**Jacob Winding**
**3059 Penelope Dr**
**Stockton CA 95212-3541**

Your Allstate agency is
**La Habra Ins Agency**
**3920 Prospect Ste G**
**Yorba Linda CA 92886-1761**

**Allstate Insurance Company**
**The Company Named in the Policy Declarations**
A Stock Company---Home Office: Northbrook, Illinois 60062

010 070 054
220711S007555
PROR24CA2022071200094801A-000097-007-0-02-00

Allstate.

# Table of Contents

**General** ... 3
Definitions Used In This Policy ... 3
Insuring Agreement ... 3
Agreements We Make With You ... 4
Conformity To State Statutes ... 4
Coverage Changes ... 4
Policy Transfer ... 4
Continued Coverage After Your Death ... 4
Cancellation ... 4
Concealment Or Fraud ... 4

**Section I—Your Property**
**Dwelling Protection-Coverage A** ... 4
Property We Cover Under Coverage A ... 4
Property We Do Not Cover Under Coverage A ... 5
**Other Structures Protection-Coverage B** ... 5
Property We Cover Under Coverage B ... 5
Property We Do Not Cover Under Coverage B ... 5
Losses We Cover Under Coverages A and B ... 5
Losses We Do Not Cover Under Coverages A and B ... 5
**Personal Property Protection-Coverage C** ... 6
Property We Cover Under Coverage C ... 6
Limitations On Certain Personal Property ... 6
Property We Do Not Cover Under Coverage C ... 7
Losses We Cover Under Coverage C ... 7
Losses We Do Not Cover Under Coverage C ... 8

**Additional Protection** ... 9
Additional Living Expense ... 9
Credit Card, Bank Fund Transfer Card, Check Forgery And Counterfeit Money ... 9
Debris Removal ... 10
Emergency Removal Of Property ... 10
Fire Department Charges ... 10
Temporary Repairs After A Loss ... 10
Trees, Shrubs, Plants And Lawns ... 10
Temperature Change ... 10
Power Interruption ... 10
Building Codes ... 10
Arson Reward ... 10
Collapse ... 10
Land ... 11
Lock Replacement ... 11

**Section I Conditions** ... 11
Deductible ... 11
Insurable Interest And Our Liability ... 11
What You Must Do After A Loss ... 11
Our Settlement Options ... 11
How We Pay For A Loss ... 11
Our Settlement Of Loss ... 13
Appraisal ... 13
Abandoned Property ... 13
Permission Granted To You ... 13
Our Rights To Recover Payment ... 13
Our Rights To Obtain Salvage ... 13
Suit Against Us ... 13
Loss To A Pair Or Set ... 13
Glass Replacement ... 13
No Benefit To Bailee ... 13
Other Insurance ... 13
Property Insurance Adjustment ... 13
Mortgagee ... 14

**Section II—Family Liability And Guest Medical Protection** ... 14
**Family Liability Protection-Coverage X** ... 14
Losses We Cover Under Coverage X ... 14
Losses We Do Not Cover Under Coverage X ... 14
**Guest Medical Protection-Coverage Y** ... 15
Losses We Cover Under Coverage Y ... 15
Losses We Do Not Cover Under Coverage Y ... 15

**Additional Protection** ... 16
Claim Expenses ... 16
Emergency First Aid ... 16
Damage To Property Of Others ... 16

**Section II Conditions** ... 17
What You Must Do After An Accidental Loss ... 17
What An Injured Person Must Do—Guest Medical Protection-Coverage Y ... 17
Our Payment Of Loss—Guest Medical Protection-Coverage Y ... 17
Our Limits Of Liability ... 17
Bankruptcy ... 17
Our Rights To Recover Payment—Family Liability Protection-Coverage X ... 17
Suit Against Us ... 17
Other Insurance—Family Liability Protection-Coverage X ... 17

**Section III—Optional Protection** ... 17
**Optional Coverages You May Buy** ... 17
Increased Coverage On Business Property-Coverage BP ... 17
Increased Coverage On Electronic Data Processing Equipment-Coverage DP ... 17
Fire Department Charges-Coverage F ... 18
Loss Assessments-Coverage G ... 18
Extended Coverage On Jewelry, Watches And Furs-Coverage J ... 18
Incidental Office, Private School Or Studio-Coverage K ... 18
Increased Coverage On Money-Coverage M ... 19
Business Pursuits-Coverage P ... 19
Increased Coverage On Securities-Coverage S ... 19
Satellite Dish Antennas-Coverage SD ... 19
Portable Cellular Communication Systems-Coverage SE ... 19
Increased Coverage On Theft Of Silverware-Coverage ST ... 19



# General

## Definitions Used In This Policy

1. **"You"** or **"your"**—means the person named on the Policy Declarations as the insured and that person's resident spouse.

2. **"Allstate," "we," "us,"** or **"our"**—means the company named on the Policy Declarations.

3. **"Insured person(s)"**—means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any dependent person in **your** care.

   Under **Family Liability Protection-Coverage X** and **Guest Medical Protection-Coverage Y**, **"insured person"** also means:
   c) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person. We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

4. **"Bodily injury"**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   Under **Guest Medical Protection-Coverage Y, bodily injury** means physical harm to the body, including sickness or disease, except that **bodily injury** does not include:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

5. **"Building structure"**—means a structure with walls and a roof.

6. **"Business"**—means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

   However, the mutual exchange of home day care services is not considered a **business**;
   b) any property rented or held for rental by an **insured person.** Rental of **your residence premises** is not considered a **business** when:
      1) it is rented occasionally for residential purposes;
      2) a portion is rented to not more than two roomers or boarders; or
      3) a portion is rented as a private garage.

7. **"Residence premises"**—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

8. **"Insured premises"**—means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquired for **your** use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
      3) cemetery plots or burial vaults owned by an **insured person**;
      4) vacant land, other than farmland, owned by or rented to an **insured person**;
      5) land owned by or rented to an **insured person** where a one-, two-, three-, or four-family dwelling is being built as that person's residence;
      6) any premises used by an **insured person** in connection with the **residence premises**;
      7) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

9. **"Occurrence"**—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

10. **"Property damage"**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

11. **"Residence employee"**—means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

12. **"Dwelling"**—means a one-, two-, three-, or four-family **building structure**, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.

## Insuring Agreement

In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

010 070 054
220711S007555
PROR24CA2022071200094801A-000097-008-0-02-00

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

## Agreements We Make With You

**We** make the following agreements with **you**:

### Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

### Coverage Changes

When **Allstate** broadens coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

### Policy Transfer

**You** may not transfer this policy to another person without **our** written consent.

### Continued Coverage After Your Death

If **you** die, coverage will continue until the end of the premium period for:

1) **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.
2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### Cancellation

**Your** Right to Cancel:

**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:

**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

1) non-payment of premium;
2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material fact in presenting a claim, or violation of any of the policy terms; or
4) there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:

**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the premium period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

### Concealment Or Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## Section I—Your Property

## Dwelling Protection-Coverage A

### Property We Cover Under Coverage A:

1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.



2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.
3. Wall-to-wall carpeting fastened to **your dwelling**.

### Property We Do Not Cover Under Coverage A:

1. Any structure including fences or other property covered under **Other Structures Protection-Coverage B.**
2. Land, except as specifically provided in **Section I, Additional Protection** under item 13., **Land.**
3. Satellite dish antennas and their systems, whether or not attached to **your dwelling.**

## Other Structures Protection-Coverage B

### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.
2. **Structures** attached to **your dwelling** by only a fence, utility line, or similar connection.
3. Construction materials and supplies at the address of the **residence premises** for use in connection with structures other than **your dwelling.**
4. Wall-to-wall carpeting fastened to other **building structures.**

### Property We Do Not Cover Under Coverage B:

1. Structures used in whole or in part for **business** purposes.
2. Any structure or other property covered under **Dwelling Protection-Coverage A.**
3. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.
4. Construction materials and supplies at the address of the **residence premises** for use in connection with the **dwelling.**
5. Satellite dish antennas and their systems, whether or not attached to building structures.

### Losses We Cover Under Coverages A and B:

**We** will cover sudden and accidental direct physical loss to property described in **Dwelling Protection-Coverage A** and **Other Structures Protection-Coverage B** except as limited or excluded in this policy.

### Losses We Do Not Cover Under Coverages A and B:

**We** do not cover loss to the property described in **Dwelling Protection-Coverage A or Other Structures Protection-Coverage B** consisting of or caused by:

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.
2. Water or any other substance that backs up through sewers or drains.
3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.
4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises.**

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1. through 4. listed above.
5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.
6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other land at the **residence premises,** except as specifically provided in **Section I, Additional Protection** under item 10., **Building Codes.**

   **We** do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.
7. The failure by any **insured person** to take all reasonable steps to preserve property when the property is endangered by a cause of loss **we** cover.
8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person.**
9. Intentional or criminal acts of or at the direction of any **insured person,** if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.
10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
11. War or warlike acts, including but not limited to, insurrection, rebellion or revolution.

12. Collapse, except as specifically provided in **Section I, Additional Protection** under item 12., **Collapse.**

13. Soil conditions, including but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

14. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

In addition, **we** do not cover loss consisting of or caused by any of the following:

15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
    b) mechanical breakdown;
    c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
    d) rust or other corrosion, mold, wet or dry rot;
    e) contamination, including, but not limited to the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;
    f) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
    g) settling; cracking; shrinking; bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
    h) insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds; or
    i) seizure by government authority.

    If any of a) through h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling, we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
    a) maintain heat in the **building structure**; or
    b) shut off the water supply and drain the system and appliances.

17. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks.

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
    a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
    b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

19. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

20. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

21. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance;

    of property whether on or off the **residence premises** by any person or organization.

23. **We** do not cover loss to covered property described in **Dwelling Protection-Coverage A** or **Other Structures Protection-Coverage B** when:
    a) there are two or more causes of loss to the covered property; and
    b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1. through 22. above.

## Personal Property Protection-Coverage C

### Property We Cover Under Coverage C:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Personal Property Protection-Coverage C**. This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Personal Property Protection-Coverage C**. The total amount of coverage for each group in any one loss is as follows:



1. $ 200 — Money, bullion, banknotes, coins and other numismatic property.
2. $ 200 — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.
3. $ 2,000 — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.
4. $ 1,000 — Trading cards, subject to a maximum amount of $250 per item.
5. $ 1,000 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than banknotes, passports, securities, tickets, and stamps, including philatelic property.
6. $ 1,000 — Manuscripts, including documents stored on electronic media.
7. $ 2,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts and motors.
8. $ 1,000 — Trailers not used with watercraft.
9. $ 2,500 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, platinum and furs, including any item containing fur which represents its principal value; subject to a maximum amount of $1,000 per item.
10. $ 2,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.
11. $ 3,000 — Theft of firearms.
12. $ 2,500 — Theft of silverware, pewterware and goldware.
13. $ 5,000 — Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a **business**. Recording or storage media will be covered only up to:
    a) the retail value of the media, if pre-programmed; or
    b) or the retail value of the media in blank or unexposed form, if blank or self-programmed.
14. $ 10,000 — Theft of rugs, including, but not limited to, any handwoven silk or wool rug, carpet, tapestry, wall hanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; subject to a maximum amount of $2,500 per item.

## Property We Do Not Cover Under Coverage C:

1. Personal property specifically described and insured by this or any other insurance.
2. Animals.
3. Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the **insured premises** and not licensed for use on public roads.
4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.
5. Property of roomers, boarders, tenants not related to an **insured person**.
6. Property located away from the **residence premises** and rented or held for rental to others.
7. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.
8. Satellite dish antennas and their systems.

## Losses We Cover Under Coverage C:

**We** will cover sudden and accidental direct physical loss to the property described in **Personal Property Protection-Coverage C**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.
2. Windstorm or Hail.

   **We** do not cover:
   a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.
3. Explosion.
4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.
5. Aircraft, including self-propelled missiles and spacecraft.
6. Vehicles.
7. Smoke.

010 070 054
220711S007555
PROR24CA20220712000094801A-000097-010-0-02-00

**We** do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   **We** do not cover vandalism or malicious mischief if **your** dwelling has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9. Falling objects.

   **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure.**

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

    **We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

    **We** do not cover loss at the **residence premises** under perils 12., 13., and 14. caused by or resulting from freezing while the **building structure** is vacant, unoccupied or under construction unless **you** have used reasonable care to:
    a) maintain heat in the **building structure**; or
    b) shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

    **We** do not cover:
    a) theft or attempted theft committed by an **insured person;**
    b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
    c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
    d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises;**
    e) theft from that part of the **residence premises** rented by **you** to other than an **insured person.**

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises.** This does not include damage to the glass.

## Losses We Do Not Cover Under Coverage C:

**We** do not cover loss to the property described in **Personal Property Protection-Coverage C** caused by or consisting of:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises.**

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1. through 4. listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure at the **residence premises**, except as specifically provided in **Section I, Additional Protection** under item 10., **Building Codes.**

   **We** do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.



8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person.**
9. Intentional or criminal acts of or at the direction of any **insured person,** if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.
10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.
12. War or warlike acts, including, but not limited to insurrection, rebellion or revolution.
13. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.
14. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance

    of property whether on or off the **residence premises** by any person or organization.
15. **We** do not cover loss to covered property described in **Personal Property Protection–Coverage C** when:
    a) there are two or more causes of loss to the covered property; and
    b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover,** items 1. through 14. above.

## Additional Protection

1. **Additional Living Expense**
   a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

      Payment for covered additional living expense will be limited to the least of the following:
      1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or
      2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
      3) 12 months.

   b) **We** will pay **your** lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss **we** cover makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.
   c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against.

   These periods of time are not limited by the termination of this policy.

   **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

   No deductible applies to this protection.
2. **Credit Card, Bank Fund Transfer Card, Check Forgery And Counterfeit Money**
   **We** will pay for loss:
   a) that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person;**
   b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;
   c) to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   **Our** maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

   **We** do not cover:
   a) loss arising from any **business** of an **insured person;**
   b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card or bank fund transfer card;
   c) loss arising out of dishonesty of an **insured person.**

   When loss is discovered, the **insured person** must give **us** immediate written notice. If the loss involves a credit card, charge plate or bank fund transfer card, the **insured person** must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

   **We** will pay only for loss occurring during the policy period, including those losses discovered and reported to **us** within one year after the policy has terminated. **We** have the right to investigate and settle any claim or suit as **we** deem appropriate. Full payment of the amount of insurance for any one loss ends **our** obligation under each claim or suit arising from the loss.

**We** will defend any suit brought against an **insured person** for the enforcement of payment covered under paragraph 2.a) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

**We** have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment covered under paragraph 2.b) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

No deductible applies to this protection.

3. **Debris Removal**
**We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
**We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
**We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
**We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover.
This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants And Lawns**
**We** will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Dwelling Protection-Coverage A** for loss to trees, shrubs, plants and lawns at the address of the **residence premises. We** will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft or collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 for reasonable expenses you incur for the removal of debris of trees at the address of the **residence premises** for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Dwelling Protection-Coverage A**.

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

8. **Temperature Change**
**We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure**.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
**We** will pay for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

10. **Building Codes**
**We** will pay up to 10% of the amount of insurance shown on the Policy Declarations under **Dwelling Protection-Coverage A** to comply with local building codes after a covered loss to the **dwelling** and when repair or replacement results increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling**.

11. **Arson Reward**
**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

12. **Collapse**
**We** will cover:
a) the entire collapse of a covered **building structure**;
b) the entire collapse of part of a covered **building structure**; and
c) direct physical loss to covered property caused by a) or b) above.

For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss **we** cover under **Section I, Personal Property Protection-Coverage C**;
b) hidden decay of the **building structure**;
c) hidden damage to the **building structure** caused by insects or vermin;
d) weight of persons, animals, equipment or contents;
e) weight of rain or snow which collects on a roof;
f) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.



Collapse does not include settling, cracking, shrinking, bulging or expansion.

This protection does not change the limit of liability that applies to the covered property.

13. **Land**
If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Section I, Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

14. **Lock Replacement**
**Dwelling Protection-Coverage A** is extended to include reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. Coverage is provided when a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $500.

## Section I Conditions

1. **Deductible**
**We** will pay when a covered loss exceeds the deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2. **Insurable Interest And Our Liability**
In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**
In the event of a loss to any property that may be covered by this policy, **you** must:
   a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, charge plate or bank fund transfer card, give written notice to the company or bank that issued the card or plate.
   b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
   c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
   d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
   e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
   f) as often as **we** reasonably require:
      1) show **us** the damaged property.
      2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
      3) produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and
   g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
      1) the date, time, location and cause of loss;
      2) the interest **insured persons** and others have in the property, including any encumbrances;
      3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
      4) any other insurance that may cover the loss;
      5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
      6) at **our** request, the specifications of any damaged **building structure** or other structure;
      7) evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss.

4. **Our Settlement Options**
In the event of a covered loss, **we** have the option to:
   a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
   b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5., **How We Pay For A Loss.**

Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**
Under **Dwelling Protection-Coverage A**, **Other Structures Protection-Coverage B** and **Personal Property Protection-Coverage C**, payment for covered loss will be by one or more of the following methods:
   a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
      1) the whole amount of loss for property covered under **Dwelling Protection-Coverage A** and **Other Structures Protection-Coverage B**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;
      2) the whole amount of loss for property covered under **Personal Property Protection-Coverage C** without

010070054
220711S007555
PROR24CA20220712000948O1A-000097-012-0-02-00

Allstate.

deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d), if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under **Dwelling Protection-Coverage A** and **Other Structures Protection-Coverage B, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure(s)** damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence** premises;
2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or
3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection-Coverage A** or **Other Structures Protection-Coverage B**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structures Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:

1) property covered under **Personal Property Protection-Coverage C**;
2) property covered under **Other Structures Protection-Coverage B** that is not a **building structure**;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure**; or
4) land.

Payment under a), b), or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures except as provided under **Section I, Additional Protection** 10., Building Codes.

d) Personal Property Reimbursement. Under **Personal Property Protection-Coverage C, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations for **Personal Property Protection-Coverage C**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:

1) property insured under **Dwelling Protection-Coverage A** and **Other Structures Protection-Coverage B**, except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to memorabilia, souvenirs and collector's items; or
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.



6. **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless another payee is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award, or a court judgment.

7. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.
b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Suit Against Us**
No suit or action may be brought against **us** unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment Condition applies:

The limit of liability shown on the Policy Declarations for **Dwelling Protection-Coverage A** will be revised at each policy anniversary to reflect the rate of change in the Index identified on the Policy Declarations.

The limit of liability for **Dwelling Protection-Coverage A** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1,000.

Adjustment in the limit of liability for **Dwelling Protection-Coverage A** will result in an adjustment in the limit of liability for **Other Structures Protection-Coverage B** and **Personal Property Protection-Coverage C** in accordance with the **Allstate** manual of Rules and Rates.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **Allstate** at the time a change in limits is made.

010 070 054
220711S007555
PROR24CA20220712000094801A-000097-013-0-02-00

**Allstate** has the right to change to another cost index or to withdraw this condition as of a policy anniversary date by giving **you** at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by **Allstate** in **your** state.

18. **Mortgagee**

A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:

a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, **an insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:

a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d) give **us** the mortgagee's right of recovery against any party liable for loss; and
e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

# Section II—Family Liability And Guest Medical Protection

## Family Liability Protection-Coverage X

### Losses We Cover Under Coverage X:

Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted our limit of liability.

### Losses We Do Not Cover Under Coverage X:

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn and garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:



a) has inboard or inboard-outboard motor power of more than 50 horsepower;
b) is a sailing vessel 26 feet or more in length;
c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee.**

7. **We** do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by an **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. **We** do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. **We** do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person.**

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person.**

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person.** This exclusion does not apply to **bodily injury** to a **residence employee.**

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person.** This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

## Guest Medical Protection-Coverage Y

### Losses We Cover Under Coverage Y:

**Allstate** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance; hospital, licensed nursing and funeral services; and prosthetic devices, eyeglasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee.**

### Losses We Do Not Cover Under Coverage Y:

1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.** This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises.** However, this exclusion does not apply to a **residence employee.**

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheelchair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee.**

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

   This exclusion does not apply to **bodily injury** to a **residence employee.**

7. We do not cover bodily injury arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person.**

10. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person.**

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person.** This exclusion does not apply to **bodily injury** to a **residence employee.**

13. **We** do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

## Additional Protection

**We** will pay, in addition to the limits of liability:

1. **Claim Expenses**
   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d) up to $250 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
   **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, **we** will pay up to $1,000 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.
   **We** will not pay for **property damage**:
   a) to property covered under **Section I** of this policy;
   b) to property intentionally damaged by an **insured person** who has attained the age of 13;
   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d) arising out of:
      1) past or present **business** activities;



2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

# Section II Conditions

1. **What You Must Do After An Accidental Loss**
In the event of **bodily injury** or **property damage**, **you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.
   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an **insured person** will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.
   d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

   Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do—Guest Medical Protection-Coverage Y**
If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
   b) Give **us** written authorization to obtain copies of all medical records and reports.
   c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss—Guest Medical Protection-Coverage Y**
**We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Family Liability Protection-Coverage X** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

   **Our** total liability under **Guest Medical Protection-Coverage Y** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights To Recover Payment—Family Liability Protection-Coverage X**
When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Suit Against Us**
   a) No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.
   b) No suit or action can be brought against **us** under **Family Liability Protection-Coverage X** until the obligation of an **insured person** to pay is finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person, and **us**.
   c) No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person**.

8. **Other Insurance—Family Liability Protection-Coverage X**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

# Section III—Optional Protection

## Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Increased Coverage On Business Property-Coverage BP**
The $2,000 limitation on **business** property located on the **residence premises**, under **Personal Property Protection-Coverage C**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises**.

2. **Increased Coverage On Electronic Data Processing Equipment-Coverage DP**
The $5,000 limitation on electronic data processing equipment under **Personal Property Protection-Coverage C**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

3. **Fire Department Charges-Coverage F**
The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Loss Assessments-Coverage G**
If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:
a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**Allstate** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Sections I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5. **Extended Coverage On Jewelry, Watches And Furs-Coverage J**
**Personal Property Protection-Coverage C** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Personal Property Protection-Coverage C**. However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

**We** do not cover loss caused by or consisting of:
a) intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
 1) may be reasonably expected to result from such acts; or
 2) is the intended result of such acts.
b) wear and tear, gradual deterioration, inherent vice, insects or vermin.
c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke.

 **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
d) war or warlike acts, including, but not limited to insurrection, rebellion or revolution.
e) failure by any **insured person** to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss **we** cover.

Any deductible shown on the Policy Declarations applicable to **Personal Property Protection-Coverage C**, also applies to a loss under this coverage.

6. **Incidental Office, Private School Or Studio-Coverage K**
a) The $2,000 limit applying to property used or intended for use in a **business** under **Personal Property Protection-Coverage C** do not apply to equipment, supplies and furnishings used in a described office, private school or studio at **your residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises**. The second limit applies to property while away from the **residence premises**. These limits are not in addition to **Personal Property Protection-Coverage C, Limitations On Certain Personal Property** on property used or intended for use in a **business**. The increased coverage does not include property held for sample, sale or delivery after sale.

b) **Family Liability Protection-Coverage X** and **Guest Medical Protection-Coverage Y** are extended to cover a described office, private school or studio occupied by an **insured person**. The occupancy of the described property shall not be considered a **business**.

**We** do not cover **bodily injury** to:
a) any employee other than a **residence employee**; or
b) any person arising out of corporal punishment administered by or at the direction of an **insured person**.



7. **Increased Coverage On Money-Coverage M**
The $200 limitation on money, bullion, banknotes, coins and other numismatic property under **Personal Property Protection-Coverage C** is increased to the amount shown on the Policy Declarations.

8. **Business Pursuits-Coverage P**
**Family Liability Protection-Coverage X** and **Guest Medical Protection-Coverage Y** are extended to cover specified **business** pursuits of an **insured person**.

**We** do not cover:

a) **bodily injury** or **property damage** arising out of the business pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person**.

This also means a partnership or joint venture of which an **insured person** is a partner or member;

b) **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;

c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;

d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or

e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

9. **Increased Coverage On Securities-Coverage S**
The $1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than banknotes, passports, securities, tickets, or stamps, including philatelic property, covered under **Personal Property Protection-Coverage C**, is increased to the amount shown on the Policy Declarations.

10. **Satellite Dish Antennas-Coverage SD**
**Personal Property Protection-Coverage C** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Personal Property Protection-Coverage C**.

The amount of coverage is shown on the Policy Declarations.

11. **Portable Cellular Communication Systems-Coverage SE**
**Personal Property Protection-Coverage C** is extended to portable cellular communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft.

Coverage applies whether or not the portable cellular communication system is used in a **business**.

The amount of coverage is shown on the Policy Declarations.

12. **Increased Coverage On Theft Of Silverware-Coverage ST**
The $2,500 limitation on theft of silverware, pewterware and goldware under **Personal Property Protection-Coverage C** is increased to the amount shown on the Policy Declarations.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and, if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate**.

Secretary

President,
Personal Property & Casualty

010 070 054
220711S007555
PROR24CA2022071200094801A-000097-016-0-02-00

# Policy Endorsement

Policy number: 999 703 966
Policy effective date: July 9, 2022

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## Amendment of Policy Provisions - AP425

This endorsement amends all of the following Allstate Insurance Company and Allstate Indemnity Company policies: Standard Mobilehome, Deluxe Mobilehome, Farmer's Comprehensive Personal Liability, Comprehensive Personal Liability, Residential Fire, Basic Homeowners, Standard Homeowners, Deluxe Homeowners, Deluxe Plus Homeowners, Deluxe Select Value Homeowners, Standard Select Value Homeowners, Deluxe Country Homeowners, Renters, Landlord Package Policy, Condominium Owners, Boatowners, and Recreational Package Policy. This endorsement is in addition to all other endorsements which apply to these policies.

It is agreed that the following changes are made to the **General** provisions:

A. The following provision is added:

**Conditional Reinstatement**
If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **Allstate** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

B. Under the provisions titled **Cancellation**, the following is added:

Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## California
## Standard Fire Policy Provisions - AP1862-2

This form contains the provisions of the Standard Fire Policy. Whenever the terms and provisions of Section I can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply.

**In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations** (or specified in endorsement attached thereto), **Allstate, for the term shown in the Declarations from inception date shown in the Declarations until canceled or expiration** at location of property involved, to an amount not exceeding the limit of liability specified, does insure **the insured named in the Declarations** and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interrupt ion of business or manufacture, nor in any event for more than the interest of the insured, against all LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of Allstate.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with any other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

**Concealment, fraud**
This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

**Uninsurable and excepted property**
This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

**Perils not included**
This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that the fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this company be liable for loss by theft.

**Other insurance**
Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance**
Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within



the control or knowledge of the insured; or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 60 consecutive days; or (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only.

**Other perils or subjects**

Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added provisions**

The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy or by statute is subject to change.

**Waiver provisions**

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

**Cancellation of policy**

This policy shall be canceled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be canceled at any time by this Company by giving to the insured a 20 (twenty) days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. If the reason for the cancellation is non-payment of premium or fraud, this policy may be canceled by this Company by giving to the insured a 10 (ten) days' written notice of cancellation.

**Mortgagee interests and obligations**

If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, the interest in this policy may be canceled by giving to the mortgagee a 10 days' written notice of cancellation.

If the insured fails to render proof of loss the mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of the mortgagee may be added hereto by agreement in writing.

**Pro rata liability**

This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

**Requirements in case loss occurs**

The insured shall give written notice to this Company of any loss without unnecessary delay, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within 60 days after the loss, unless the time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required and obtainable, verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

The insured, as often as may be reasonably required and subject to the provisions of Section 2071.1, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examinations all books of account, bills, invoices, and other vouchers, or certified copies thereof if the originals be lost, at any reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made. The insurer shall inform the insured that tax returns are privileged against disclosure under applicable law but may be necessary to process or determine the claim.

The insurer shall notify every claimant that they may obtain, upon request, copies of claim-related documents. For purposes of this section, "claim-related documents" means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third-party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs. However, attorney work product and attorney-client privileged documents, and documents that indicate fraud by the insured or that contain medically privileged information, are excluded from the documents an insurer is required to provide pursuant to this s ection to a claimant. Within 15 calendar days after receiving a request from an insured for claim-related documents, the insurer shall provide the insured with copies of all

claim-related documents, except those excluded by this section. Nothing in this section shall be construed to affect existing litigation discovery rights.

**Appraisal**
In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this Company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. Appraisal proceedings are informal unless the insured and this Company mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally. In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this Company but shall not be compelled.

**Adjusters**
If, within a six-month period, the Company assigns a third or subsequent adjuster to be primarily responsible for a claim, the insurer, in a timely manner, shall provide the insured with a written status report. For purposes of this section, a written status report shall include a summary of any decisions or actions that are substantially related to the disposition of a claim, including, but not limited to, the amount of losses to structures or contents, the retention or consultation of design or construction professionals, the amount of coverage for losses to structures or contents and all items of dispute.

**Company's options**
It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required.

**Abandonment**
There can be no abandonment to this Company of any property.

**When loss payable**
The amount of loss for which this Company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this company of an award as herein provided.

**Suit**
No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss. If the loss is related to a state of emergency, as defined in subdivision (b) of Section 8558 of the Government Code, the time limit to bring suit is extended to 24 months after inception of the loss.

**Subrogation**
This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.

---

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## Building Structure Reimbursement Extended Limits Endorsement - AP445 (4/95)

For an additional premium and when the Policy Declarations indicates that the **Building Structure Reimbursement Extended Limits Endorsement** applies, the following amendment is made to condition 5. (titled **How We Pay For A Loss**) in **Section I Conditions**:

In provision c) (titled "Building Structure Reimbursement."), item 3) of the second paragraph is replaced by the following:

3) 150% of the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection-Coverage A** or **Other Structures Protection-Coverage B**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

This endorsement does not apply to any optional coverage purchased for earthquake damage, if earthquake damage coverage is purchased with **your** homeowner policy.

This endorsement applies only if:

1) **You** insure **your dwelling**, attached structures and detached **building structures** to 100% of replacement cost as determined by:
   a) a home replacement cost estimator completed and based on the accuracy of information **you** furnished; or
   b) **our** inspection of your **residence premises**;
2) **You** have accepted the Property Insurance Adjustment Condition, agree to accept each annual adjustment in the **Dwelling**



**Protection-Coverage A** limit of liability, and pay any additional premium charged; and

3) **You** notify **us** within 60 days of the start of any modifications that increase the aggregate value of **your dwelling**, attached structures and detached **building structures** at the **residence premises** by $5,000 or more, and pay any resulting additional premium due for the increase in value.

All other policy terms and conditions apply.

---

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## Wildfire Deductible Endorsement - AP4886

It is agreed that **your** policy is amended as follows:

I. In the **General** section, under **Definitions Used In This Policy**, the following definition is added:

**"Wildfire"**—means a fire predominantly fueled by timber, scrub, brush, grass, or any other type of vegetation.

II. In **Section I Conditions**, under **Deductible**, the following is added:

Wildfire Deductible
The wildfire deductible applies in the event of loss covered under **Dwelling Protection-Coverage A**, **Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C**, if the loss, in whole or in part arises out of, is aggravated by or results from a **wildfire**.

The wildfire deductible amount will appear on **your** Policy Declarations. **We** will pay only when a covered loss to which this deductible applies exceeds the wildfire deductible amount. **We** will then pay only the excess amount.

All other policy terms and conditions apply.

---

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## Marijuana Amendatory Endorsement - AVP504

I. In **Section I—Your Property, Personal Property Protection-Coverage C** the following changes are made:

A. Under **Limitations On Certain Personal Property**, the following is added:

- $ 5,000 — Marijuana, related equipment, and accessories.

B. Under **Losses We Do Not Cover Under Coverage C**, item 9 is replaced by the following:

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

   **We** will not apply this exclusion to events, perils or conditions arising out of the possession of, or use of, marijuana for personal consumption by an **insured person** up to the extent that the possession of, or use of, marijuana for personal consumption by an **insured person** is allowed in accordance with the laws of the state and local ordinances in which the marijuana is located at the time of loss if the loss that occurs is not an intentional or otherwise criminal act or omission of or at the direction of any **insured person**.

II. In **Section II—Family Liability And Guest Medical Protection**, the following changes are made:

A. In **Family Liability Protection-Coverage X**, under **Losses We Do Not Cover Under Coverage X**, item 1 is replaced by the following:

1. We do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

   **We** will not apply this exclusion to **bodily injury** or **property damage** arising out of the possession of, or use of, marijuana

010 070 054
220715007555
PROR24CA20220712000948 01A-000097-018-0-02-00

for personal consumption by an **insured person** up to the extent that the possession of, or use of, marijuana for personal consumption by an **insured person** is allowed in accordance with the laws of the state and local ordinances in which the marijuana is located at the time of the **occurrence** if the **occurrence** is not an intentional act or otherwise criminal act or omission of or at the direction of any **insured person.**

B. In **Guest Medical Protection-Coverage Y**, under **Losses We Do Not Cover Under Coverage Y**, item 1 is replaced by the following:

1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.** This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

   **We** will not apply this exclusion to **bodily injury** arising out of the possession of, or use of, marijuana for personal consumption by an **insured person** up to the extent that the possession of, or use of, marijuana for personal consumption by an **insured person** is allowed in accordance with the laws of the state and local ordinances in which the marijuana is located at the time of the **occurrence** if the **occurrence** is not an intentional act or otherwise criminal act or omission of or at the direction of any **insured person.**

All other policy terms and conditions apply.

---

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

# California Deluxe Plus Homeowners Amendatory Endorsement - AP4486-4

This endorsement amends your Deluxe Plus Homeowners Policy and is in addition to all other amendatory endorsements which apply to this policy.

I. In the **Table of Contents**, under **Section I Conditions**, the heading Our Rights To Recover Payment is replaced by Our Rights To Recover Payment And The Deductible.

II. The **General** section is amended as follows:

A. Under **Definitions Used In This Policy**, item 1 is replaced by the following:

1. **"You"** or **"your"**—means the person named on the Policy Declarations as the insured and:
   a) that person's resident spouse; or
   b) a party who has established with that person a registered domestic partnership under California state law if a resident of the same household.

B. The **Cancellation** provision is replaced by the following:

**Cancellation**

Your Right to Cancel:

You may cancel this policy by notifying us of the future date you wish to stop coverage.

**Our** Right to Cancel:

**We** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us, we** may cancel this policy for any reason by giving **you** at least 20 days notice before the cancellation takes effect, however, if the reason for cancellation is non-payment of premium or fraud, **we** may cancel this policy by giving **you** at least 10 days notice of cancellation.

When this policy has been in effect for 60 days or more, or if it is a renewal with **us, we** may cancel this policy for one or more of the following reasons:

1. Non-payment of premium;
2. Fraud or material misrepresentation by **you** or **your** representative in obtaining the policy;
3. Fraud or material misrepresentation by **you** or **your** representative in pursuing a claim under this policy;
4. Grossly negligent acts or omissions by **you** or **your** representative which substantially increase any of the hazards insured against;
5. **You** have been convicted of a crime and one of the necessary elements of the crime was an act increasing any hazard insured against;
6. Physical changes in the insured property resulting in the property becoming uninsurable; or
7. **You** have purchased an earthquake policy from the California Earthquake Authority, and **you** fail to pay a premium surcharge authorized by the California Earthquake Authority that is applicable to that earthquake policy.



If the cancellation is for non-payment of premium, **we** will mail **you** at least 10 days notice. If the cancellation is for any other reason, **we** will mail **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed to be proof of notice. Coverage under this policy will terminate on the date and time stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**We** have the right not to renew or continue the policy beyond the current policy period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 75 days before the end of the policy period. If **we** fail to mail **you** notice at least 75 days before the end of the policy period, **your** policy will remain in effect for 75 days from the date the notice is mailed. **Our** mailing the notice of non-renewal to **you** will be deemed to be proof of notice.

C. The **Concealment Or Fraud** provision is replaced by the following:

**Misrepresentation, Fraud Or Concealment**
It is understood and agreed that the statements made by any named **insured person(s)**, or any applicant, in the application for insurance, during the application process, during the renewal process, or on the Policy Declarations, are warranties and are incorporated into, and shall form part of this policy.

This entire policy may be voided from its inception if any warranty made by any named **insured person(s)**, or any applicant, is found to be false.

**We** may not provide coverage for any **insured person** who has concealed material facts, made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

D. The following provisions are added:

**Payment**
If **your** payment of the initial premium amount due is by check, draft, or any remittance other than cash, such payment is conditional upon the check, draft, or other remittance being honored upon presentation. If such check, draft, or remittance is not honored upon presentation, this policy shall be deemed void from its inception. This means that **we** will not be liable under this policy for any claims or damages which would otherwise be covered had the check, draft, or remittance been honored upon presentation.

**What Law Will Apply**
This policy is issued in accordance with the laws of California and covers property or risks principally located in California. Subject to the following paragraph, the laws of California shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside California, claims or disputes regarding that covered loss to property, or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy shall be brought, heard and decided only in a state or federal court located in California. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in California, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside California, lawsuits regarding that covered loss to property, or any other covered **occurrence** may also be brought in the judicial district where that covered loss to property, or any other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

III. In **Section I—Your Property**, the following changes are made:

A. In **Other Structures Protection–Coverage B**, under **Losses We Do Not Cover Under Coverages A and B**, the following changes are made:

1. item 15.d) is replaced by the following:

   15. d) rust or other corrosion;

2. The following item is added:

   24. Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

   This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions**,

010 070 054
220711S007555
PROR24CA20220712000948O1A-000097-019-0-02-00

**Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

B. In **Personal Property Protection–Coverage C**, the following changes are made:

1. Under Limitations On Certain Personal Property, the following item is added:

   15. $ 400 — Theft of compact discs, while compact discs are away from the **residence premises**. This is the maximum amount **we** will pay for an entire collection.

2. Under **Losses We Do Not Cover Under Coverage C**, the following item is added:

   16. Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

   This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

C. Under **Additional Protection**, the following changes are made:

1. The **Additional Living Expense** provision is replaced by the following:

   1. **Additional Living Expense**

      a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

      Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:

      1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
      2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
      3) 24 months.

      However, if the covered loss that makes **your residence premises** uninhabitable relates to a "state of emergency," as defined in Section 8558 of the California Government Code and if **you** acting in good faith and with reasonable diligence encounter a delay or delays in the reconstruction process that are the result of circumstances beyond **your** control, **we** will grant an extension of up to 12 additional months, for a total of 36 months. Circumstances beyond **your** control include, but not limited to:

      1) Unavoidable construction permit delays;
      2) Lack of necessary construction materials; or
      3) Lack of available contractors to perform the necessary work.

      **We** will provide additional extensions of six months if necessary for good cause for a delay or delays in the reconstruction process of the **dwelling** if the covered loss relates to a "state of emergency." However, in no event shall **our** payment for additional living expense exceed 36 months from the time of a covered loss.

      In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense in a).

      b) We will pay **your** lost fair rental income resulting from a covered loss under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**, less charges and expenses which do not continue, when a loss **we** cover under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months. However, payments for **your** lost fair rental income expense due to



remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a loss **we** insure against. However, payments for increase in living expenses or **your** lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

   **We** will provide additional extensions of two weeks if the civil authority's prohibition of the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against relates to a "state of emergency" as defined in Section 8558 of the California Government Code.

   However, payments for increase in living expenses or **your** lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

These periods of time are not limited by the termination of this policy. **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. The **Building Codes** provision is replaced by the following:

   10. **Building Codes**
   **We** will pay up to 10% of the amount of insurance on the Policy Declarations under **Dwelling Protection–Coverage A** to comply with local building codes after covered loss to the **dwelling** when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling**.

D. In **Section I Conditions**, the following changes are made:

   1. Under item 5, **How We Pay For A Loss**, the following changes are made:

      a) The second paragraph in sub-item b) Actual Cash Value is replaced by the following:

      **You** may make claim for additional payment as described in paragraph c) and paragraph d) if **you** repair or replace the damaged, destroyed or stolen covered property within 12 months of the actual cash value payment. If the covered loss relates to a "state of emergency," as defined in Section 8558 of the California Government Code, **you** may make claim for additional payment as described in paragraph c) and paragraph d) if **you** repair or replace the damaged, destroyed or stolen covered property within 36 months of the actual cash value payment.

      **We** will provide additional extensions of six months if **you**, acting in good faith and with reasonable diligence, encounter a delay or delays in the reconstruction process of the **dwelling** that are the result of circumstances beyond **your** control, and if the covered loss relates to a "state of emergency" as defined in Section 8558 of the California Government Code. Circumstances beyond your control include, but not limited to:
      1) Unavoidable construction permit delays;
      2) Lack of necessary construction materials; or
      3) Lack of available contractors to perform the necessary work.

      b) Sub-item c) Building Structure Reimbursement is replaced by the following:

      c) Building Structure Reimbursement. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 12 months of the actual cash value payment. If the covered loss relates to a "state of emergency," as defined in Section 8558 of the California Government Code, **we** will make additional payment under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 36 months of the actual cash value payment.

**We** will provide additional extensions of six months if **you**, acting in good faith and with reasonable diligence, encounter a delay or delays in the reconstruction process of the **dwelling** that are the result of circumstances beyond **your** control, and if the covered loss relates to a "state of emergency" as defined in Section 8558 of the California Government Code. Circumstances beyond **your** control include, but not limited to:

1) Unavoidable construction permit delays;
2) Lack of necessary construction materials; or
3) Lack of available contractors to perform the necessary work.

This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure(s)** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**, and shall not be payable for any losses excluded in **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, item 24.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;
2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or
3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection-Coverage A** or **Other Structures Protection-Coverage B**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, the limit of liability shall not exceed the amount payable to repair, rebuild or replace the insured structure(s) at their original location under Building Structure Reimbursement described above.

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

In the event of a covered loss relating to a "state of emergency," as defined in Section 8558 of the Government Code, if the Limits of Liability shown on the Policy Declarations for **Dwelling Protection-Coverage A** are insufficient to repair, rebuild or replace damaged, destroyed or stolen property covered under **Dwelling Protection-Coverage A**, then **you** shall be permitted to combine the Limits of Liability shown on the Policy Declarations for **Dwelling Protection-Coverage A** and **Other Structures Protection-Coverage B**.

If **you** combine the limits of liability, any payment made for **Dwelling Protection-Coverage A** will reduce the limit of liability for **Dwelling Protection-Coverage A** until that limit is exhausted.

If **you** combine the limits of liability and the limit of liability for **Dwelling Protection-Coverage A** is exhausted, then any additional payments made for **Dwelling Protection-Coverage A** or **Other Structures Protection-Coverage B** will reduce the limit of liability for **Other Structures Protection-Coverage B** until the **Other Structures Protection-Coverage B** limit of liability is exhausted.

Additionally, depreciation will not be withheld for property covered under **Dwelling Protection-Coverage A** that qualifies for replacement cost under Building Structure Reimbursement.

c) The first paragraph in sub-item d) Personal Property Reimbursement is replaced by the following:

d) Personal Property Reimbursement. Under **Personal Property Protection-Coverage C**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or



replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 12 months of the actual cash value payment. If the covered loss relates to a "state of emergency," as defined in Section 8558 of the California Government Code, **we** will make additional payment under **Personal Property Protection-Coverage C** to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 36 months of the actual cash value payment.

**We** will provide additional extensions of six months if **you**, acting in good faith and with reasonable diligence, encounter a delay or delays in the reconstruction process of the **dwelling** that are the result of circumstances beyond **your** control, and if the covered loss relates to a "state of emergency" as defined in Section 8558 of the California Government Code. Circumstances beyond **your** control include, but not limited to:

1) Unavoidable construction permit delays;
2) Lack of necessary construction materials; or
3) Lack of available contractors to perform the necessary work.

d) The following is added:

In the event of a covered total loss to **your** furnished **residence premises**, which is related to a "state of emergency," as defined in Section 8558 of the California Government Code, **we** will offer additional payment up to an amount equal to 30% of the limit of liability of **your residence premises**, but no more than a maximum of $250,000, without an itemization of the damaged, destroyed or stolen covered personal property. This does not increase **your** limit of liability under **Personal Property Protection-Coverage C**.

2. Item 10, **Our Rights To Recover Payment**, is replaced by the following:

10. **Our Rights To Recover Payment And The Deductible**

When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid as well as the **insured person's** applicable insurance deductible shown on the Policy Declarations.

**We** retain the right to recover the amount **we** have paid, and the **insured person** expressly assigns us the right to recover the amount of the applicable insurance deductible shown on the Policy Declarations through the disposition of such demand whether through litigation or otherwise. If a recovery is made, **we** will reimburse all or a portion of the deductible to the **insured person**.

The **insured person** may have a right to recover losses in excess of their deductible for losses not covered by the policy. **We** are not obligated to pursue the recovery of losses not paid pursuant to the policy and will not do so absent an additional, separate written agreement.

An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

3. Item 17, **Property Insurance Adjustment**, is replaced by the following

17. **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment condition applies, **you** agree that, at each policy anniversary, **we** may increase the limit of liability shown on the Policy Declarations for **Dwelling Protection-Coverage A** to reflect the minimum amount of insurance coverage **we** are willing to issue for the succeeding premium period under **Dwelling Protection-Coverage A** for **your dwelling** and other property **we** cover under **Dwelling Protection-Coverage A**.

Any adjustment in the limit of liability for **Dwelling Protection-Coverage A** will result in an adjustment in the limit of liability for **Other Structures Protection-Coverage B** and **Personal Property Protection-Coverage C** in accordance with **our** manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by us at the time a change in limits is made.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the limits of liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the limits of liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

4. The following item is added:

010 070 054
220711S007555
PROR24CA20220712000094801A-000097-021-0-02-00

19. **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**

    In the event of a covered water loss under **Dwelling Protection-Coverage A, Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C, we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation.**

    **Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection-Coverage A, Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

    This Condition does not increase the limits of liability under **Dwelling Protection-Coverage A, Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C.**

IV. In **Section II—Family Liability And Guest Medical Protection**, the following changes are made:

A. In **Family Liability Protection-Coverage X**, under **Losses We Do Not Cover Under Coverage X**, the following changes are made:

1. Item 1.a) is replaced by the following:

   a) such **insured person** lacks the mental capacity to govern such **insured person's** conduct;

2. Item 15 is replaced by the following:

   15. **We** do not cover any liability an **insured person** assumes under any contract or agreement. **We** will not cover any contract or agreement in connection with a **business** of an **insured person** or any loss assessments levied against an **insured person** by an association of dwelling owners of which the **insured person** is a member.

3. Items 17 and 18 are added:

   17. **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

   18. **We** do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

B. In **Guest Medical Protection-Coverage Y**, under **Losses We Do Not Cover Under Coverage Y**, the following changes are made:

1. Item 1.a) is replaced by the following:

   a) such **insured person** lacks the mental capacity to govern such **insured person's** conduct;

2. Item 14 is added:

   14. **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

All other policy terms and conditions apply.

---

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## California
## Paperless Disclosure - AU14943

This disclosure form applies to policyholders who have elected to conduct business with Allstate electronically.

The option to transact business electronically with Allstate and its affiliate companies is voluntary. Records which may be delivered to you electronically upon your consent to electronic delivery include all documents, notices and correspondence related to your insurance policy, premium payments (billing) and claims. You can unenroll your policies from electronic delivery, or update your email address on file, by changing your paperless settings/contact information in your Allstate account accessible via www.allstate.com/myaccount or by calling 1-800-ALLSTATE.

---



# Policy Endorsement

Policy number: 999 703 966
Policy effective date: July 9, 2022

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## California
## Workers' Compensation And Employers' Liability Coverage For Residence Employees Coverage Form - AP1127

THIS COVERAGE FORM AMENDS THE FOLLOWING ALLSTATE INSURANCE COMPANY AND ALLSTATE INDEMNITY COMPANY POLICIES: Deluxe, Deluxe Plus, Standard Homeowners, Condominium and Renters.

**Part A—Coverages Defined**
When "Workers' Compensation And Employers' Liability Coverage For Residence Employees" appears on the Policy Declarations (Coverage WC), the following coverages apply:

**Coverage I: Workers' Compensation**
With respect to a **residence employee**, **Allstate** will pay on behalf of an **insured person** as an employer of a **residence employee** all benefits when due as required by the California Workers' Compensation Law. At a minimum, such benefits will be equivalent to those benefits in the standard workers' compensation policy issued in California. If benefits prescribed by a state other than the State of California apply, **Allstate** will pay those instead; and

**Coverage II: Employers' Liability**
With respect to a **residence employee**, **Allstate** will pay on behalf of an **insured person**, all damages for which an **insured person** is legally liable because of **bodily injury** sustained by a **residence employee**. This coverage, however, does not apply to any suit brought or judgment or to any action on such judgment rendered by any court outside of the United States of America, its territories and possessions, or Canada.

**Definitions Used In This Coverage Form**
The following definitions apply only for the purposes of this coverage form:

1. **Business**—means:
   a. any full- or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**; however, the mutual exchange of home day care services is not considered a **business**.

   b. unless described on the Policy Declarations, any property rented or held for rental by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      i. it is rented occasionally for residential purposes;
      ii. a portion is rented to not more than two roomers or boarders; or
      iii. a portion is rented as a private garage.
2. **Bodily injury**—means bodily harm, sickness or occupational disease, including required care, and death including reasonable burial expense.
3. **Residence employee**—means an employee of any **insured person**; while
   a. performing duties arising out of and in the course of employment in connection with a **residence premises**; or

   b. performing similar duties elsewhere which are related to or arise from an **insured premises**, except those duties performed in connection with a **business** of any **insured person**.

   **Residence employee**, however, does not include an employee, who, during the 90 calendar days immediately preceding the date of their injury,
   1) engaged in such employment for less than 52 hours; or
   2) earned less than $100 in wages.

**Conditions Of Coverage**
Coverage under this form applies only if all of the following conditions are met:

1. The **bodily injury** to the **residence employee** must be caused by an employment related accident or an occupational disease.
2. The **bodily injury** to a **residence employee** must occur while the **residence employee** is:
   a. in the United States of America, its territories or possessions, or Canada; or
   b. temporarily located elsewhere but only if they are a citizen or resident of the United States or Canada.
3. The **bodily injury** to a **residence employee** must occur during the policy period.
4. If **bodily injury** to a **residence employee** results from or is aggravated by an occupational disease, the employee's last day of exposure to the conditions causing or aggravating such **bodily injury** must occur during the policy period while the **residence employee** is in the employment of an **insured person**.

**Applicable Policy Provisions**
In addition to the provisions specific to this coverage form, the following policy parts apply:

1. Under the "General" Policy Section:
   a. "Definitions Used In This Policy", the following definitions apply: **Allstate**, **we**, **us**, **our**, **Insured person(s)**, **Insured premises**, **Residence premises**, **You** and **your**.
   b. "Coverage Changes"
   c. "Policy Transfer"
   d. "Continued Coverage After Your Death"
   e. "Cancellation"
   f. "Concealment Or Fraud"
2. Under Section II—"Family Liability and Guest Medical Protection", "Family Liability Protection-Coverage X", "Losses We Cover Under Coverage X only that part of the provision pertaining to the defense of any **insured person**.

010 070 054
2207115007555
PROR24CA2022071200094801A-000097-022-0-02-00

3. Under Section II—"Additional Protection": "Claim Expense(s)"
4. Under Section II—"Conditions":
   a. "What You Must Do After An Accidental Loss", except those references to "property damage" and "Damage To Property Of Others" within this provision do not apply.
   b. "Bankruptcy"
   c. "Our Rights To Recover Payment—Family Liability Protection-Coverage X"
   d. "Suit Against Us"

**Additional Provisions Applicable to This Coverage Form**

1. **Conformity To State Statutes**
   Provisions of this coverage form conflicting with the California Workers' Compensation Law regarding any **residence employee** for whom workers' compensation benefits must be provided by this coverage form are amended to conform to the appropriate state law.

2. **Other Insurance**
   If a loss covered by this coverage form is also covered by other insurance, **Allstate** will pay only that proportion of benefits and/or damages the limits of liability applying to this coverage form bear to the total amount of insurance covering the loss. If however, any other insurance is written specifically on an excess basis over the limits of liability of this policy, coverage under this form will be primary.

3. **Notice Of Claim**
   Under Coverage I: Workers' Compensation, **we** will consider knowledge by any **insured person** of **bodily injury** to a **residence employee** to be knowledge by **us**.

4. **Our Rights To Review Your Employment Records**
   **Allstate** or **our** legal representative has the right but not the obligation to review any records related to the employment of a **residence employee** by an **insured person. We** may review these records and adjust premiums for a period of up to three years from the last anniversary date of the policy to which this coverage form is attached. **Our** review, performed with **your** knowledge and cooperation, will occur during regular business hours and may be used to determine and adjust the premiums accordingly for the latest three policy terms this coverage was in force.

**Limits Of Liability—Coverage II:**

**Our** total limit of liability shall not exceed $100,000 for all damages because of **bodily injury**:

a. sustained by one or more **residence employees** in any one accident; or

b. caused by disease and sustained by a **residence employee.**

**Our** total limit of liability shall not exceed $500,000 for all damages arising out of **bodily injury** by disease regardless of the number of **residence employees** who sustain injury by disease.

**Exclusions**

Coverage does not apply:

1. Under Coverages I and II, to any **bodily injury** or liability:
   a. to anyone other than a **residence employee**;
   b. arising from any **business** of an **insured person**; or

2. Under Coverage II, to any damages for which **you** become liable because of:
   a. assumption of liability by any **insured person** under any contract or agreement;
   b. any liability resulting from intentional acts of any **insured person**;
   c. any liability resulting from the employment of any **residence employee** employed in violation of law;
   d. the employment of an **insured person** by any other **insured person.**
   e. any obligations imposed by a workers' compensation, occupational disease, unemployment compensation, disability benefits law or similar law;
   f. any liability for **bodily injury** by an occupational disease unless a written claim is made or suit brought against an **insured person** within 36 months after the end of the policy period to which this coverage form applies;
   g. punitive or exemplary damages; or
   h. any employment practices prohibited by any California or Federal statute.

**Part B—Schedule Of Full-Time Residence Employees**

| Code No. | Classification of Employees | No. Of Employees | Rate Per Employee | Premium Charge |
|---|---|---|---|---|
| 0913 | Residence Employees Inservants | 00 | $0.00 | $0.00 |
| 0912 | Residence Employees Outservants | 00 | $0.00 | $0.00 |



# Important notices

Policy number: 999 703 966
Policy effective date: July 9, 2022

## Address Confirmation Request

### Please Confirm Your Current Address

As you may know, we base our property insurance rates, in part, on where a customer's property is located. According to our records, the location of the dwelling your property policy covers is:

Address: **3059 Penelope Dr**
City/Village/Township: **Stockton**
State: **CA**
Zip: **95212-3541**
County: **San Joaquin**

**We ask that you please review this information to make sure the address we've listed above is accurate.** If you see any information that is incorrect, please contact your Allstate representative as soon as possible and provide them with the correct information. Once we receive your updated information, we will send you an Amended Policy Declarations and, if necessary, adjust your insurance premium to reflect the updated information.

If the information above is correct, you do not need to contact us. Feel free to contact your Allstate representative with any questions you may have about this notice.

**X72770**

## Important Information Regarding Your Policy's Wildfire Deductible

*This notice provides general information about the circumstances under which a Wildfire deductible applies to your property insurance policy. For detailed information about this deductible and your insurance coverage, please read this notice, your policy including, but not limited to, your Policy Declarations, the Wildfire Deductible Endorsement and any other applicable endorsements. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.*

The Wildfire deductible is the amount you agree to pay in the event of covered loss caused by a wildfire.

The Wildfire deductible will be shown on your Policy Declarations, and will apply to the total of all losses covered under the Dwelling Protection, Other Structures Protection, and/or Personal Property Protection coverages in your policy. We will pay for a covered loss to which the Wildfire deductible applies only when the amount of that loss exceeds your Wildfire deductible. We will then pay only the amount that exceeds your deductible. Your Wildfire deductible is equal to, and cannot be greater or less than, the All Other Perils deductible shown on your Policy Declarations.

Please note that deductible(s) other than the Wildfire deductible, shown on your enclosed Policy Declarations, may apply to covered losses to which the Wildfire deductible does not apply, unless your policy specifies otherwise.

If the Wildfire deductible is calculated as a percentage of the Dwelling Protection coverage limit, the deductible amount will change accordingly if the Dwelling Protection coverage limit changes for any reason, including, for example:

- you change your Dwelling Protection coverage limit; or
- due to the application at renewal of the policy's Property Insurance Adjustment provision, if applicable, which may automatically increase your Dwelling Protection coverage limit as described in the policy.

If you have any questions about the information provided with this insert, your current Wildfire deductible, or your coverage in general, please call your Allstate agent or representative or call us at 1-800 ALLSTATE® (1-800-255-7828).

**XC3802-1**

## What You Should Know About Flood Insurance

Most homeowners, renters and commercial insurance policies do not provide coverage for flood damage. In fact, protection against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program (NFIP) and offers standard flood insurance policies.* A flood insurance policy can help complete the insurance protection for your property and help protect your financial well-being.

### You May Have More Risk from Flood Than You Think

Approximately 90 percent of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you, over 25 percent of all flood losses occur in low- to moderate-risk areas.

What's more, flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy). So if you purchase your NFIP coverage through Allstate, you would have the convenience and peace of mind that comes with working with just one claim

010 070 054
220711500755
PROR24CA220712000948O1A-000097-023-0-02-00

 adjuster and one agent, instead of two or more for a flood claim.

### Flood Coverage Is Affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy. You can switch to an NFIP flood insurance policy administered by Allstate for the same amount of premium you may be paying elsewhere. If you choose Allstate, you can have the quality service you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at allstate.com.

* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

**X73168**

## Additional Protection for Your Most Valuable Possessions

Property insurance covers many belongings, but some items may require higher coverage limits than those in a standard property policy.

Scheduled Personal Property (SPP) coverage gives you additional protection against loss or damage to your valuables. It's protection not typically provided with standard property coverage. SPP benefits typically include:

- No deductibles to meet
- Coverage for lost or damaged items
- Coverage for valuables kept in a storage location outside your home

### Items That May Need the Extra Protection

SPP coverage provides protection for an array of valuable personal property. Here are some of the items you can protect by purchasing SPP coverage through Allstate:

- Jewelry (including wedding rings and precious or semi-precious stones)
- Furs
- Cameras (digital, still, movie, video and related equipment)
- Silverware and antiques (including furniture)
- Musical instruments
- Collections (stamps, coins, music)
- Fine art works (including paintings, etchings, vases and sculptures)
- Manuscripts or books
- Home-office equipment (laptop, computer, audio/visual)
- Sports equipment (such as golf clubs)

### Affordable Protection for Your Valuables

The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need. The rates are generally a small percentage of the total value of the items you're insuring. This means that your valuables are being protected for only a fraction of the cost.

### Regularly Review Your SPP Coverage

Even if you currently have SPP coverage, it's a good idea to review it annually. It's possible that the value of your property has changed or that you've purchased new items that have not been added to your coverage.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at allstate.com.

**X73169**

## Notice of Right to Designate a Third Party

We want you to know that you have the right to designate one additional individual to receive copies of any coverage termination notices that we may issue if you fail to pay the required premium when due. You also have the right to replace the individual you previously designated or terminate the third party designation entirely. This third party will not receive copies of your regular billing statements or any other documents for your policy.

### How to start, change or end a third party designation

To add, change or remove a third party simply contact your Allstate Agent or representative to receive a copy of a Third Party Designation form. After you return the form with the name and address of the designee or any changes you wish to make, we will process your request.



Additionally, we will notify you annually of your right to designate a third party. If you have already designated a third party and do not wish to make any changes, you do not need to do anything.

**If you have questions**

Please contact your Allstate Agent or representative, or call us at 1-800-ALLSTATE (1-800-255-7828) if you have any questions or would like more information.

X73598

## Important Surcharge Information

Your premium may include a state-required surcharge. This occurs when the California Guarantee Association charges Allstate for a share of California consumer insurance claims left unpaid by other insurance companies that have gone out of business. State law requires all insurance companies in California to recover these charges by surcharging their customers.

If you have questions regarding this surcharge, or any aspect of your policy or coverage, please contact your Allstate agent or the nearest Allstate office for personal assistance.

X3196

## If You Have a Problem with Your Insurance

**Please contact your Allstate representative if you have any questions or concerns about your insurance. If a problem arises that you and your Allstate representative are unable to resolve satisfactorily, please call or write to:**

**Allstate Customer Service**
**PO Box 660598, Dallas, TX 75266-0598**
**1-800-ALLSTATE℠ (1-800-255-7828)**

**If the problem remains unresolved, you may contact the California Department of Insurance at:**

**Consumer Services Division**
**California Department of Insurance**
**300 South Spring Street, Los Angeles, CA 90013**
**Consumer Hotline: 1-800-927-4357**
**Website:**
**http://www.insurance.ca.gov/01-consumers/101-help/index.cfm**

**Please contact the Department of Insurance only if you have been unable to satisfactorily resolve the problem with your Allstate representative and with Allstate.**

X3380-6

## Information About Available Discounts On Your Allstate Property Insurance

The premium for your property insurance policy is determined based on a variety of factors, including information you have given us. It is important that you notify us if the information upon which your premium is based is incorrect or incomplete, so that we may adjust your premium accordingly.

Allstate has several property insurance discounts available for which you may qualify. Please note that the particular discounts available vary depending on the type of property policy you have. Below is a listing of these discounts, including a brief description of each. Any discounts you are currently receiving are listed on the enclosed Policy Declarations.

**If you have questions about whether you may qualify for any of the following discounts, please contact your Allstate agent in order to discuss your possible eligibility.**

### AGE OF HOME/RENOVATED HOME DISCOUNT

You may be eligible for a discount on the Fire, Water, Liability, Wind, and All Other premium components of your Homeowners policy if your home is nine years of age or less, or if it is older than 10 years old but has been completely renovated, and all of the renovations were completed less than 10 years ago. Complete renovation includes the installation of roofing, plumbing, electrical and heating and cooling systems by a licensed contractor. The amount of the discount ranges between 1 and 52.5 percent and varies depending on the age of your home.

### FIRE RESISTIVE DISCOUNT

You may be eligible for a 15% discount on your Fire, Wildfire, and Fire Following Earthquake premium components of your Homeowners policy if your home is made of fire resistive or fireproof construction, such as brick or masonry.

### 55 AND RETIRED DISCOUNT

You may be eligible for a 5.1% to 20.3% discount on your Renters policy or on the Fire, Water, Liability, Wind, and All Other premium components of your Homeowners policy if:

- ☐ one of the Named Insured(s) on your policy is age 55 or older, and

010 070 054
220711S007555
PROR24CA2022071200094801A-000097-024-0-02-00

- both the Named Insured and spouse, or registered domestic partner, are not gainfully employed full time or seeking full time gainful employment, and
- if the insured premises with Allstate is your principal place of residence.

## HOME AND AUTO DISCOUNT

You may be eligible for a discount of 7.9% to 19% on your Renters policy or on the Fire, Water, Liability, Wind, and All Other premium components of your Homeowners policy if:

- the Named Insured or spouse, or registered domestic partner, are also the named insured on an Allstate Northbrook Indemnity Company, Allstate Insurance Company, Allstate Indemnity Company or Allstate Property and Casualty Insurance Company auto policy in California, and
- the insured premises is the principal residence of the Named Insured.

## PROTECTIVE DEVICE DISCOUNT

You may be eligible for a discount of 5% to 15% on your Renters policy or on the Fire and All Other premium components of your Homeowners policy if your insured premises is equipped with certain protective devices, such as:

- smoke detectors, fire extinguishers and dead bolt locks on all exterior doors, or
- a burglar alarm or fire alarm which reports directly to a central reporting station or directly to the police or fire departments, or
- a complete sprinkler system throughout your home.

The amount of the discount varies depending on how many and what types of devices are installed in your insured premises. Additionally, a discount is offered on Renters policies in buildings that have certain 24 hour manned security.

## CLAIM FREE DISCOUNT

You may be eligible for a discount of 31.4% to 38.6% on the Water, Wind, and All Other premium components of your Homeowners policy if the Named Insured or spouse, or registered domestic partner, has maintained a qualifying property policy for the required amount of time, depending on the policy, and have been claim free for 3 to 5 years. The discount varies depending on the type of policy maintained with Allstate Insurance Company or Allstate Indemnity Company.

## HOME BUYER DISCOUNT

You may be eligible for a 4% to 20% discount on the Fire, Water, Liability, Wind, Wildfire, Fire Following Earthquake and All Other premium components of your Homeowners policy if you are the original owner of your home and the date that the Allstate policy becomes effective is within 12 months of the date the home was purchased. This discount is available to homes purchased on or after September 1, 2000.

## FULL-TIME OCCUPANCY DISCOUNT

You may be eligible for a discount of approximately 15% on your Renters policy premium if the dwelling in which you reside regularly has an adult presence twenty-four hours a day.

***This notice provides only a general description of the qualifications and conditions for each discount. Other qualifications and conditions may apply. Therefore, for complete details on discount qualifications and conditions, or if you think you may qualify for a discount, please contact your Allstate Agent.***

**X66450-6**

Dear Customer,

We'd like to remind you that damage caused by an earthquake is not covered by your Allstate property insurance policy. As required by California law, you are now being offered optional insurance against damage caused by an earthquake. Please read the following state-required information regarding optional earthquake insurance:

**Your residential property insurance policy does not cover earthquake damage to your home or its contents.**

**To cover earthquake damage to your home and its contents you need to purchase a separate earthquake insurance policy. The coverage provided by an earthquake insurance policy is different from, and typically more limited than, the coverage provided by your residential property insurance policy.**

**California law requires insurance companies to offer earthquake insurance in conjunction with a residential property insurance policy. If you do not accept the offer of earthquake insurance below within 30 days of the mailing of this notice, your insurance company shall presume that you have not accepted this offer of earthquake insurance.**

**You may purchase earthquake insurance coverage on the following terms:**

**(A) Amount of Dwelling/Building Coverage Limit: $707,574.00**

**(B) Deductible: $35,378.00**

**(C) Contents Coverage Limits: $5,000.00**

**(D) Additional Living Expenses Coverage Limit: $1,500.00**



**(E) Estimated Annual Premium: $376.00**

**The deductible represents the amount of damage your covered property must incur before the earthquake insurance coverage begins. If your covered loss is less than the applicable deductible, you may not receive any payment.**

**If you choose not to accept this offer within the 30-day period, you may apply for earthquake coverage at a later date.**

**Your insurance company contracts with the California Earthquake Authority (CEA) to offer earthquake insurance to its customers. For an additional premium, you can choose CEA coverage options such as higher limits for Contents or Additional Living Expenses, increased building code upgrade limits, or a lower deductible. You can also choose to buy certain CEA coverages separately.**

**Contact your insurance agent or your insurance company to obtain details regarding this offer of earthquake insurance and other coverage options.**

**DEDUCTIBLE**

If you purchase earthquake insurance from the California Earthquake Authority (CEA), no payment will be made for a loss covered under any coverage of the CEA policy (except Loss Of Use-Coverage D), including, but not limited to, Dwelling-Coverage A and Personal Property-Coverage C, until the amount of the loss covered under Dwelling-Coverage A exceeds the deductible shown on the Declarations page. The CEA will then pay the amount of the covered loss that exceeds the deductible, up to the applicable limit of insurance and subject to the other policy terms and conditions. This means, for example, that even though you may incur a substantial personal property loss, *no payment will be made for that loss unless and until the amount of the covered dwelling damage and other covered damage under Dwelling-Coverage A exceeds the deductible amount*. Loss to excluded or uncovered property will not be included in the calculation of the deductible.

If the deductible amount exceeds the covered replacement/repair cost under Dwelling-Coverage A, no payment will be made for a loss covered under either Dwelling-Coverage A or Personal Property-Coverage C. For a detailed explanation of how the deductible applies, please read the policy.

Please note that no deductible applies to Loss Of Use-Coverage D.

**OPTIONAL COVERAGES ARE AVAILABLE FOR ALL POLICY TYPES**

Please keep in mind that supplemental coverage options are available to CEA policyholders. These coverage options, available for an additional premium, allow CEA policyholders to increase the insurance limits for Personal Property-Coverage C and Loss Of Use-Coverage D (additional living expenses). For example, a CEA policyholder may have Coverage C and Coverage D limits under a CEA policy of:

- Personal Property-Coverage C $5,000
- Additional Living Expenses (Loss of Use)-Coverage D $1,500

However, a CEA policyholder can raise these limits as indicated below:

- Personal Property-Coverage C at limits of $25,000, $50,000, $75,000, $100,000, $150,000, or $200,000
- Additional Living Expenses (Loss of Use)-Coverage D $10,000, $15,000, $25,000, $50,000, $75,000, or $100,000

010 070 054
220711S007555
PROR24CA20220712000948O1A-000097-025-0-02-00

In addition, the following deductible options are available to CEA Basic Earthquake Policy—Homeowners Choice policyholders and to CEA Basic Earthquake—Homeowner Policyholders: 5%, 10%, 15%, 20%, and 25%.

**OPTIONAL COVERAGES ARE AVAILABLE FOR COMMON INTEREST DEVELOPMENT POLICIES**
If the CEA Common Interest Development Earthquake Policy is selected, the CEA offers other optional coverages (besides Personal Property-Coverage C and Loss Of Use-Coverage D) for an additional premium. These include Building Property-Coverage A and Loss Assessment-Coverage E. Loss Assessment Coverage pays your share of a covered assessment charged against you by a property owners association. The assessment has to result from direct loss to the property owned by all association members and caused by an earthquake.

All coverage is subject to policy terms and conditions. If you would like additional information about any of the optional coverages mentioned above, including a premium quote, please contact your Allstate Agent.

Please note that Allstate has elected to participate in the California Earthquake Authority (CEA). This means that, if you choose to purchase earthquake insurance, your earthquake insurance policy will be provided by the California Earthquake Authority and not by Allstate. Allstate and your Allstate representative are authorized to represent the California Earthquake Authority. You are not required to purchase earthquake insurance; however, if you do want to purchase a California Earthquake Authority policy, please call your Allstate Agent or call 1-800-ALLSTATE (1 800-255-7828).

**California Earthquake Authority**
Allstate Insurance Company and Allstate Indemnity Company are California Earthquake Authority participating insurers.

**X73631 (01-2016 edition)**

## How We Compensate Our Agencies

The company listed below uses local agencies to assist customers with their insurance decision-making process by providing customers with information and high quality service. These agencies provide numerous services to customers on the company's behalf. Agencies are paid a commission by the company for selling and servicing the company's insurance policies and may be eligible to receive additional compensation and rewards based on performance.

Allstate Insurance Company

**X72006-1**



010 070 054
220711S007555
PROR24CA2022071200094801A-000097-026-0-02-00

# EXHIBIT B

 *La Habra Ins Agency*
*3920 Prospect Ste G*
*Yorba Linda CA 92886-1761*

Information as of July 9, 2022

Policyholder(s)
**Jacob Winding**

Policy number
**999 703 979**

Your Allstate agency is
**La Habra Ins Agency**
(714) 792-0887

JACOB WINDING
3059 PENELOPE DR
STOCKTON CA 95212-3541

# Welcome to Allstate!

Thank you for choosing Allstate for your Personal Umbrella insurance. We look forward to protecting what's important to you for many years.

## Here's your insurance policy

Along with your new Personal Umbrella policy, we've included a guide to what's in this package and answers to some common questions.

## How to contact us

Please give your Allstate Agent a call at (714) 792-0887 if you have any questions. It's our job to make sure you're in good hands.

Sincerely,

Thomas J. Wilson
President, Allstate Insurance Company

NP210



Policy number: 999 703 979
Policy effective date: July 9, 2022

## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. ***Next steps:*** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. ***Next steps:*** please pay the minimum amount by the due date listed on it.

You can also pay your bill online at Allstate.com/support or through the Allstate mobile app. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule. Para español, llamar al 1-800-979-4285.

☐ **What if I have questions?**
Visit Allstate.com/support to browse our list of frequently asked questions and find information regarding billing or policy documents. You can also create an online account to access and manage your policies. Para español, llamar al 1-800-979-4285.

## A guide to your welcome package

**Policy Declarations***
The Policy Declarations lists policy details, such as your property details and coverages.

**Policy**
Your policy is your insurance contract; it lists all of the terms and conditions of your coverage.

**Policy Endorsements**
If changes are made to your policy, these documents will include your new contract language.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.

**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features: www.allstate.com/madesimple Espanol.allstate.com/facildeentender

*** *To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.***

010 088 054
220711S007556
PROR24CA20220712000948O4A-000059-001-0-02-00

Policy number: 999 703 979
Policy effective date: July 9, 2022

# Important Privacy Choices For Consumers

**You have the right to control whether we share some of your personal information.**
**Please read the following information carefully before you make your choices below.**

**Your Rights**
You have the following rights to restrict the sharing of personal and financial information with our affiliates (companies we own or control) and outside companies that we do business with. Nothing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us. This includes sending you information about some other products or services.

**Your Choices**
**Restrict Information Sharing With Companies We Own or Control (Affiliates):**
Unless you say "No," we may share personal and financial information about you with our affiliated companies.

☐ NO, please do not share personal and financial information with your affiliated companies.

**Restrict Information Sharing With Other Companies We Do Business With To Provide Financial Products And Services:**
Unless you say "No," we may share personal and financial information about you with outside companies we contract with to provide financial products and services to you.

☐ NO, please do not share personal and financial information with outside companies you contract with to provide financial products and services.

**Time Sensitive Reply**
You may make your privacy choice(s) at any time. Your choice(s) marked here will remain unless you state otherwise. If you already asked us not to share your personal and financial information, you do not need to complete this form again. However, if we do not hear from you we may share some of your information with affiliated companies and other companies with whom we have contracts to provide products and services.
**TO USE THIS FORM, PLEASE PROVIDE ALL OF THE FOLLOWING INFORMATION TO ALLOW US TO PROCESS YOUR REQUEST:**

Name: Jacob Winding

ACCOUNT OR POLICY NUMBER(S): **999 703 979**

Signature: ______________________________

To exercise your choices do one of the following:

(1) Call our toll-free number 1-800-856-2518;

(2) Fax our toll-free number 1-855-219-7425; or

(3) Fill out, sign and send back this form to us using the envelope provided (you may want to make a copy for your records).

**X73499v2**



010 088 054
220711SC007556
PROR24CA20220712000948D4A-000059-002-0-02-00

Policy number: 999 703 979
Policy effective date: July 9, 2022

Allstate.

## Privacy Policy Statement

Thank you for choosing Allstate. We value you, respect your privacy and work hard to protect your personal information.

This statement is provided on behalf of Allstate Insurance Company and the affiliates ("Allstate") listed at the end of this notice. We would like to explain how we collect, use and share the information we obtain about you in the course of doing business.

### Our Privacy Assurance

- We do not sell your personal or medical information to anyone.
- We do not share your information with non-affiliate companies that would use it to contact you about their own products and services, unless permitted pursuant to a joint marketing agreement.
- We require persons or organizations that represent or assist us in servicing your policy and claims to keep your information confidential.
- We require our employees to protect your personal information and keep it confidential.

As you can see, protecting your personal information is important to us. In addition to the practices described above, we use a variety of physical, technical and administrative security measures that help to safeguard your information. For Social Security Numbers (SSN), this includes restricting access to our employees, agents and others who use your SSN only as permitted by law: to comply with the law, to provide you with products and services, and to handle your claims. Also, our employees' and agents' access to and use of your SSN are limited by the law, our policies and standards, and our written agreements.

Our privacy practices continue to apply to your information even if you cease to be an Allstate customer.

### What Personal Information Do We Have and Where Do We Get It

We gather personal information from you and from outside sources for business purposes. Some examples of the information we collect from you may include your name, phone number, home and e-mail addresses, driver's license number, social security number, marital status, family member information and healthcare information. Also, we maintain records that include, but are not limited to, policy coverages, premiums, and payment history. We also collect information from outside sources that may include, but is not limited to, your driving record, claims history, medical information and credit information.

In addition, Allstate and its business partners gather information through Internet activity, which may include, for example, your operating system, links you used to visit allstate.com, web pages you viewed while visiting our site or applications, Internet Protocol (IP) addresses, and cookies. We use cookies, analytics and other technologies to help:

- Evaluate our marketing campaigns
- Analyze how customers use our website and applications
- Develop new services
- Know how many visitors have seen or clicked on our ads

Also, our business partners assist us with monitoring information including, but not limited to, IP addresses, domain names and browser data, which can help us to better understand how visitors use allstate.com.

### How We Use and Share Your Personal Information

In the course of normal business activities, we use and share your personal information. We may provide your information to persons or organizations within and outside of Allstate. This would be done as required or permitted by law. For example, we may do this to:

- Fulfill a transaction you requested or service your policy
- Market our products
- Handle your claim
- Prevent fraud
- Comply with requests from regulatory and law enforcement authorities
- Participate in insurance support organizations

The persons or organizations with whom we may share your personal information may include, among others:

- Your agent, broker or Allstate-affiliated companies
- Companies that perform services, such as marketing, credit card processing, and performing communication services on our behalf
- Business partners that assist us with tracking how visitors use allstate.com.
- Other financial institutions with whom we have a joint marketing agreement
- Other insurance companies that play a role in an insurance transaction with you
- Independent claims adjusters
- A business or businesses that conduct actuarial or research studies
- Those who request information pursuant to a subpoena or court order
- Repair shops and recommended claims vendors

### The Internet and Your Information Security

We use cookies, analytics and other technologies to help us provide users with better service and a more customized web



Policy number: 999 703 979
Policy effective date: July 9, 2022

experience. Additionally, our business partners use tracking services, analytics and other technologies to monitor visits to allstate.com. The website may also use Web beacons (also called "clear GIFs" or "pixel tags") in conjunction with cookies. If you prefer, you can choose to not accept cookies by changing the settings on your web browser. Also, if you would like to learn about how we gather and protect your information over the Internet, please see our online privacy statement located at the bottom of the allstate.com homepage.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the web site.

This includes, for example, information regarding:
1) how we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
2) who should use our web site;
3) the security of information over the Internet; and
4) links and co-branded sites.

## How You Can Review and Correct Your Personal Information

You can request to review your personal information contained in our records at any time. To do this, please send a letter to the address below requesting to see your information for the previous two years. If you believe that our information is incomplete or inaccurate, you can request that we correct it. Please note we may not be able to provide information relating to investigations, claims, litigation, and other matters. We will be happy to make corrections whenever possible.

Please send requests to:
Allstate Insurance Company Customer Privacy Inquiries
PO Box 660598
Dallas, TX 75266-0598

## Sharing Personal Information: Privacy Choices for California Customers

Unless you request otherwise, we may share your personal information with one or more Allstate affiliates. We may do this for a number of reasons, including making you aware of the different products, services and offers they can provide. Similarly, unless you request otherwise, we may share your personal information with outside companies with which we have a written agreement to jointly offer you products and services that we believe may be of interest to you.

You have the right to limit some sharing of your personal information by reviewing and completing an "Important Privacy Choices for Consumers" form. We've enclosed this form unless you previously opted to limit some sharing of your personal information. Please keep in mind that regardless of your choices, Allstate may share your personal information with its affiliates, outside companies and other entities to comply with the law, provide you with the best service on your Allstate accounts, or as otherwise permitted by law.

## We Appreciate Your Business

Thank you for choosing Allstate. We understand your concerns about privacy and confidentiality, and we hope this notice has been helpful to you. We value our relationship with you and look forward to keeping you in Good Hands®.

If you have questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-ALLSTATE.

We reserve the right to change our Privacy practices, procedures, and terms.

Allstate Insurance Company

**Allstate affiliates to which this notice applies:** Allstate County Mutual Insurance Company, Allstate Finance Company, Allstate Financial Services, LLC (LSA Securities in LA and PA), Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Investment Management Company, Allstate Life Insurance Company, Allstate Life Insurance Company of New York, Allstate Motor Club, Inc., Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Northbrook Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Texas Lloyd's, Allstate Texas Lloyd's, Inc., Allstate Vehicle and Property Insurance Company, Deerbrook General Agency, Inc., Deerbrook Insurance Company, Lincoln Benefit Life Company, North Light Specialty Insurance Company.

Please Note: Allstate affiliates American Heritage Life Insurance Company, Castle Key Insurance Company and Castle Key Indemnity Company participate in information sharing with the affiliates listed above, but have a separate privacy notice for their customers.

(ed. 2/11/2014)

**X73497-1**

010 088 054
220711S007556
PROR24CA20220712000948O4A-000059-003-0-02-00

# Personal Umbrella Policy Declarations

Your policy effective date is July 9, 2022

## Total Premium for the Premium Period (Your bill will be mailed separately)

| | |
|---|---|
| Excess Liability | $565.71 |
| **Total** | **$565.71** |

***Your bill will be mailed separately. Before making a payment, please refer to your latest bill, which includes payment options and installment fee information. If you do not pay in full, you will be charged an installment fee(s).***

*See the **Important Payment and Coverage Information** section for details about installment fees.*

*Your policy premium has been developed using the following information:*

- *3 Vehicles*
- *Supporting Allstate Home and/or Auto Policy(ies)*
- *2 Operators in the household*

*Premium includes a charge for 3 automobiles*

## Discount (included in your total premium)

| | |
|---|---|
| Multiple Policy Discount - Auto and Property | **33%** |

## Operators in the household*

Jacob Winding

Belinda Smith

**The operators named are currently listed on your auto policy. If there are any other operators in your household or if any of the operators named have left your household, please contact your agent or producer of record to have your policy updated.*

## Policy Coverages and Limits of Liability

| ***Coverages*** | ***Limits of Liability*** |
|---|---|
| Excess Liability - Bodily Injury and Property Damage<br>Annual Aggregate Limit | $1,000,000 each occurrence<br>$2,000,000 during the current policy period |
| Excess Liability - Personal Injury<br>Annual Aggregate Limit | $500,000 each occurrence<br>$1,000,000 during the current policy period |
| Additional Dwelling Rented To Others | **Not purchased*** |

**** This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.***

Information as of July 9, 2022

## Summary

Named Insured(s)
**Jacob Winding**

Mailing address
**3059 Penelope Dr**
**Stockton CA 95212-3541**

Policy number
**999 703 979**

Your policy provided by
**Allstate Insurance Company**

Policy period
Begins on **July 9, 2022**
Ends on **July 9, 2023**

Premium period
Beginning **July 9, 2022** through **July 9, 2023** at 12:01 a.m. Pacific Time

Your Allstate agency is
**La Habra Ins Agency**
3920 Prospect Ste G
Yorba Linda CA 92886-1761
(714) 792-0887

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

CA088NBD



## Required Underlying Insurance Limits

You must maintain the Required Underlying Insurance, at or above the limits as shown below at all times for each liability exposure any insured person has. Please refer to the "Required Underlying Insurance" provision of the policy.

| ***Coverage*** | | ***Required Underlying Limit*** |
|---|---|---|
| Personal Liability - Bodily Injury and Property Damage Liability<br>1. Homeowners, Condominium, Renters, Mobilehome, Manufactured Home or other Personal Liability Policy<br>2. Incidental Office, Private School or Studio | | Combined Single Limit<br>$300,000 per occurrence |
| One, Two, Three or Four Family Residential Rental Property - Bodily Injury and Property Damage Liability | | $300,000 per occurrence |
| Automobiles and Motor Homes | Bodily Injury | $250,000 each person<br>$500,000 each occurrence |
| | Property Damage | $100,000 each occurrence<br>**or**<br>Combined Single Limit<br>$500,000 per occurrence |
| Motorcycles, Motor Scooters, Mopeds and Recreational Vehicles | Bodily Injury<br>including Passenger Liability when available | $100,000 each person<br>$300,000 each occurrence |
| | Property Damage | $100,000 each occurrence<br>**or**<br>Combined Single Limit<br>$300,000 per occurrence |
| | Guest Passenger Liability<br>(when available as a separate limit) | $100,000 each person<br>$300,000 each occurrence<br>**or**<br>Combined Single Limit<br>$300,000 per occurrence |
| Personal Watercraft such as jet skis and wet bikes | Bodily Injury | $100,000 each person<br>$300,000 each occurrence |
| | Property Damage | $100,000 each occurrence<br>**or**<br>Combined Single Limit<br>$100,000 per occurrence |
| Watercraft Liability<br>Craft under 26 feet and up to 50 horsepower (U.S. horsepower) | Bodily Injury | $100,000 each person<br>$300,000 each occurrence |
| | Property Damage | $100,000 each occurrence<br>**or**<br>Combined Single Limit<br>$100,000 per occurrence |
| Watercraft Liability<br>Craft 26 feet and over or greater than 50 horsepower (U.S. horsepower) | Bodily Injury | $250,000 each person<br>$500,000 each occurrence |
| | Property Damage | $100,000 each occurrence<br>**or**<br>Combined Single Limit<br>$250,000 per occurrence |

***(continued)***

CA0BBNBD
010 088 054
220711S007556
PROR24CA20220712000094804A-000059-004-0-02-00

Personal Umbrella Policy Declarations
Policy number: 999 703 979
Policy effective date: July 9, 2022

| *Coverage* | *Required Underlying Limit* |
|---|---|
| Employers' Liability - if Workers' Compensation or similar coverage for Domestic Workers is required or purchased voluntarily | $300,000 each occurrence<br>$300,000 each employee<br>$500,000 policy aggregate |

## Your policy documents

Your Personal Umbrella policy consists of the Policy Declarations and the following documents. Please keep them together.

- Personal Umbrella Policy - AS463
- California Personal Umbrella Policy Amendatory Endorsement - AS378-2
- California Paperless Disclosure - AU14943

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

- Please note: This is not a request for payment. Any adjustments to your premium will be reflected on your next scheduled bill which will be mailed separately.
- If you decide to pay your premium in installments, there will be a $3.50 installment fee charge for each payment due. If you make 6 installment payments during the policy period, and do not change your payment plan method, then the total amount of installment fees during the policy period will be $21.00.

  If you are on the Allstate® Easy Pay Plan, there will be a $1.00 installment fee charge for each payment due. If you make 6 installment payments during the policy period, and remain on the Allstate® Easy Pay Plan, then the total amount of installment fees during the policy period will be $6.00.

  If you change payment plan methods or make additional payments, your installment fee charge for each payment due and the total amount of installment fees during the policy period may change or even increase.

  Please note that the Allstate® Easy Pay Plan allows you to have your insurance payments automatically deducted from your checking or savings account.

**Allstate Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

Thomas J. Wilson
President

Susan L. Lees
Secretary

CA088NBD



**ALLSTATE INSURANCE COMPANY**

# Personal Umbrella Policy

**CALIFORNIA** AS463

Policy number
**999 703 979**

Policy effective
**July 9, 2022**

Policyholders
**Jacob Winding**
**3059 Penelope Dr**
**Stockton CA 95212-3541**

Your Allstate agency is
**La Habra Ins Agency**
**3920 Prospect Ste G**
**Yorba Linda CA 92886-1761**

**Allstate Insurance Company**
**The Company Named in the Policy Declarations**
A Stock Company---Home Office: Northbrook, Illinois 60062

010 088 054
220711S007556
PROR24CA20220712000094804A-000059-005-0-02-00

## Table of Contents

**General Provisions** .... 3
Definitions Used In This Policy .... 3
Insuring Agreement .... 3
When And Where The Policy Applies .... 4
Conformity To State Statutes .... 4
Changes .... 4
Premium Changes .... 4
Coverage Changes .... 4
Duty To Report Policy Changes .... 4
Assignment Of Interest .... 4
Bankruptcy Or Insolvency .... 4
Cancellation .... 4
Concealment Or Fraud .... 4
Charge For Insufficient Funds Or Closed Account .... 4
Action Against Us .... 4

**Required Underlying Insurance** .... 4
Personal Liability, Residence Premises And Residence Employees .... 5
Incidental Office, Private School Or Studio .... 5
Automobiles And Motorcycles .... 5
Recreational Motor Vehicles .... 5
Watercraft .... 5

**Excess Liability Insurance—Bodily Injury And Property Damage-Coverage XL** .... 5
**Section 1** .... 5
Losses We Cover Under Excess Liability Insurance—Bodily Injury And Property Damage—Section 1 .... 5
Amounts We Pay—Section 1 .... 6

**Section 2** .... 6
Losses We Cover Under Excess Liability Insurance—Bodily Injury And Property Damage—Section 2 .... 6
Amounts We Pay—Section 2 .... 6
Exclusions—Losses We Do Not Cover Under Excess Liability Insurance—Bodily Injury And Property Damage—Section 2 .... 6

**Section 3—Common Provisions** .... 8
Limit Of Liability .... 8
When We Pay .... 8
Defense We Will Provide .... 8
Additional Payments We Will Make .... 8
Retained Limit .... 8

**Excess Liability Insurance—Personal Injury-Coverage XP** .... 9
Losses We Cover Under Excess Liability Insurance—Personal Injury .... 9
Exclusions—Losses We Do Not Cover Under Excess Liability Insurance—Personal Injury .... 9
Limit Of Liability .... 9
Amounts We Pay .... 9
When We Pay .... 10
Defense We Will Provide .... 10
Additional Payments We Will Make .... 10
Retained Limit .... 10

**Conditions** .... 10
What To Do If There Is An Occurrence, Claim Or Suit Notice .... 10
Assistance And Cooperation .... 10
Our Rights Under This Policy—Right Of Appeal .... 10
Settlement Or Defense .... 10
Subrogation .... 10



# General Provisions

## Definitions Used In This Policy

1. **Bodily injury** means:
   a) physical harm to the body, including sickness, disease, disability or death resulting from physical harm to the body;
   b) shock, mental anguish or mental injury.

   **Bodily injury** does not include:
   a) any harm resulting from:
      i) false arrest; false imprisonment; wrongful detention;
      ii) wrongful entry; invasion of rights of occupancy; or
      iii) libel; slander; humiliation; defamation of character; invasion of rights of privacy.
   b) any symptom, effect, condition, disease or illness resulting in any manner from:
      i) lead in any form;
      ii) asbestos in any form;
      iii) radon in any form; or
      iv) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at any residence premises owned by an **insured person**.
   c) i) any venereal disease;
      ii) herpes;
      iii) Acquired Immune Deficiency Syndrome (AIDS);
      iv) AIDS related complex (ARC); or
      v) Human Immunodeficiency Virus (HIV);

      or any related or resulting symptom, effect, condition, disease or illness related to c) i) through v) above.

2. **Business** means:
   a) any full- or part-time activity of any kind:
      1) arising out of or relating to an occupation, trade or profession of an **insured person**; and
      2) engaged in by an **insured person** for economic gain, including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is a **business**.
   b) the rental or holding for rental of any property by an **insured person**.

   **Business** does not include:
   a) volunteer civic service which an **insured person** performs without pay for a **business** which was formed and functions as a not-for-profit organization and which is not a function of the **insured person's** occupation, profession or trade;
   b) the occasional rental or holding for rental of **your** primary residence premises for residential purposes;
   c) the rental or holding for rental of a portion of **your** primary residence premises to not more than two roomers or boarders;
   d) the occasional or part-time business activities of an **insured person** who is under 21 years of age;
   e) an **insured person's** occupancy of an office, private school or studio located on the primary residence premises; or
   f) the mutual exchange of home day care services.

3. **Business property** means any property on which a **business** is conducted.

4. **Insured person** means:
   a) **you**, and any other person who is named on the Policy Declarations;
   b) any person related to **you** by blood, marriage or adoption who is a resident of **your** household; or
   c) any dependent person in **your** care, if that person is a resident of **your** household.

   However, persons defined in 4.b) who are over the age of 25 are not **insured persons** for any **occurrence** arising out of the ownership, maintenance or use of any motor vehicle owned by them.

5. **Occurrence** means an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury**, **personal injury** or **property damage**.

6. **Personal injury** means harm resulting from:
   a) false arrest; false imprisonment; wrongful detention;
   b) wrongful entry; invasion of rights of occupancy;
   c) libel; slander; humiliation; defamation of character; invasion of rights of privacy.

   Fines and penalties imposed by law are not included.

7. **Property damage** means physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction.

8. **Retained limit** means the amount of damages an **insured person** must assume and pay for any **occurrence** if:
   a) no underlying insurance is required; and
   b) no other insurance applies to the **occurrence**.

9. **We**, **us** or **our** means the company named on the Policy Declarations.

10. **You** or **your** means the person named on the Policy Declarations as the insured and that person's resident spouse.

11. **Hostile fire** means a fire which becomes uncontrollable or escapes from its intended location.

## Insuring Agreement

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with all policy terms and conditions. This includes maintaining all Required Underlying Insurance.

010 088054
220711S007556
PROR24CA20220712000094804A-000059-006-0-02-00

The terms of this policy impose joint obligations on persons defined as **insured persons.** This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person.**

This policy provides only excess insurance. It does not contribute with any Required Underlying Insurance or other insurance which applies to an **occurrence.** It also is excess to any **retained limit** an **insured person** assumes.

### When And Where The Policy Applies

This policy applies to an **occurrence** anywhere in the world that takes place during the policy period. The Policy Declarations show the policy period. This policy is not complete without the Policy Declarations.

### Conformity To State Statutes

If any provision of this policy conflicts with the statutes of the state in which the policy is issued, the provision is amended to conform to such statutes.

### Changes

### Premium Changes

The coverage provided and premium for this policy are based on information **we** have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that, if this information changes or is incorrect or incomplete, **we** may adjust **your** coverage or premium accordingly during the policy period or take other appropriate action.

Any calculation or adjustment of **your** premium will be made using the rules, rates and forms in effect, and on file if required, for **our** use in **your** state.

### Coverage Changes

When **we** broaden coverage during the policy period without additional charge, **you** have the broadened coverage if **you** have the coverage to which the changes apply. The broadened coverage applies on the date the coverage change is effective in **your** state. Otherwise, the policy can be changed only by endorsement.

### Duty To Report Policy Changes

**Your** policy was issued in reliance on the information **you** provided. Changes may occur to the information **you** gave us on **your** application for this policy or to **your** Required Underlying Insurance policies during the policy period. If so, **you** must inform **us** within 30 days of the following:

1. Changes in:
   a) **your** address or the change of address of any **insured person;**
   b) limits of liability of **your** Required Underlying Insurance.
2. **You** sell, acquire or otherwise transfer ownership of any automobiles, motorcycles, recreational motor vehicles, watercraft or residence premises.

   Coverage will continue only if:
   a) **you** ask **us** to continue coverage within 30 days or before the end of the current policy period, whichever is first;
   b) **we** agree to continue coverage based on the change; and
   c) **you** pay the additional premium.

Any change in **your** coverage will be made using the rules, rates and forms in effect, and on file, if required, for **our** use in **your** state.

### Assignment Of Interest

No interest in this policy may be transferred without **our** written consent. If an **insured person** dies, coverage will continue for the rest of the policy term for the **insured person's** legal representative. The representative is covered only while acting in that capacity.

### Bankruptcy Or Insolvency

The bankruptcy or insolvency of an **insured person** or that person's estate will not affect **our** obligations under this policy.

### Cancellation

**Your** Right to Cancel:
**You** may cancel this policy at any time. To do so, **you** must notify **us**, stating the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**We** may cancel this policy by mailing notice to **you** at the address shown on the Policy Declarations. Mailing the notice is proof of notice. Coverage will stop at the date and time stated in the notice. If **we** cancel for non-payment of premium, the date of cancellation will be at least 10 days after the date of mailing. Otherwise, **we** will give **you** 30 days notice.

A refund, if due, will be in proportion to the time **your** policy has been in effect. Cancellation will be effective even if the refund is not made immediately.

**Our** Right Not to Renew or Continue:
**We** have the right not to renew this policy. If **we** do not intend to renew, **we** will mail notice to **you** at least 30 days before the end of the policy period.

### Concealment Or Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

### Charge For Insufficient Funds Or Closed Account

If, at any time, **your** payment of any premium amount due is made by check, electronic transaction, or other remittance which is not honored because of insufficient funds or a closed account, **you** will be charged a fee.

### Action Against Us

No one may bring an action against **us** unless there has been full compliance with all policy terms.

## Required Underlying Insurance

**You** must maintain the Required Underlying Insurance policy. **You** must maintain the Required Underlying Insurance at or above the limits as shown on the Policy Declarations "Required Underlying Limit" at all times for each liability exposure any **insured person** has. If **you** fail to maintain the Required



Underlying Insurance policy applicable to the **occurrence**, there will be no coverage for any **insured person** under this policy until the damages exceed the Required Underlying Insurance limit for that exposure. If the underlying insurance applicable to the **occurrence** does not provide at least the limits required under this section of this policy, **you** will be responsible for the damages up to the Required Underlying Insurance amounts.

If **you** maintain limits equal to or greater than the Required Underlying Insurance limits, this policy will apply as excess above the actual limits **you** maintain. If any of **your** underlying coverage limits are used up, reduced, or canceled:

1. **you** must try to replace the coverage; and
2. **you** must notify **us** immediately.

### Personal Liability, Residence Premises And Residence Employees

**You** must maintain at least the Required Underlying Insurance amount listed on the Policy Declarations for each residence premises **you** own, maintain or use. This liability coverage may be provided by either:

1. a separate Comprehensive Personal Liability policy; or
2. a Homeowners Insurance or similar package policy.

If **you** have domestic employees not subject to workers' compensation laws, **you** must maintain at least the Required Underlying Insurance listed on the Policy Declarations:

1. as a separate policy; or
2. as part of **your** Homeowners Insurance or similar package policy.

### Incidental Office, Private School Or Studio

**You** must maintain at least the Required Underlying Insurance amount listed on the Policy Declarations for each office, private school or studio on **your** residence premises which is occupied by an **insured person**, either:

1. as a separate policy; or
2. as part of **your** Homeowners Insurance or similar package policy.

### Automobiles And Motorcycles

For each automobile or motorcycle **you** own, maintain, or use, including any machinery or equipment attached to the automobile or motorcycle, **you** must maintain the following coverage with limits equal to or greater than the Required Underlying Insurance amount listed on the Policy Declarations:

1. Bodily Injury Liability coverage and Property Damage Liability coverage; and
2. if the insured vehicle is a motorcycle and Passenger Liability coverage is available for purchase with the insurance policy for the motorcycle, Passenger Liability coverage.

### Recreational Motor Vehicles

For each motorized land vehicle **you** own, designed for use off public roads, whether or not subject to motor vehicle registration, **you** must maintain the following coverage with limits equal to or greater than the Required Underlying Insurance amount listed on the Policy Declarations:

1. Bodily Injury Liability coverage and Property Damage Liability coverage; and
2. if Passenger Liability coverage is available for purchase with the insurance policy for the recreational motor vehicle, Passenger Liability coverage.

### Watercraft

1. **You** must maintain at least the Required Underlying Insurance amount listed on the Policy Declarations for Bodily Injury Liability coverage and Property Damage Liability coverage for each watercraft owned by or rented to an **insured person** which:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, hovercraft, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.
2. **You** must maintain at least the Required Underlying Insurance amount listed on the Policy Declarations for each watercraft **you** own which is shorter in length and lower in horsepower than those in 1. above.

   **You** may maintain this coverage as part of **your** Comprehensive Personal Liability, Homeowners Insurance or similar package policy.

## Excess Liability Insurance—Bodily Injury And Property Damage-Coverage XL

### Section 1

Under Section 1 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising out of an **occurrence** that is both a loss **we** cover under **Excess Liability Insurance—Bodily Injury And Property Damage—Section 1** of this policy and a covered loss under **your** Required Underlying Insurance policy.

**We** will not pay any punitive or exemplary damages, fines and penalties.

This section does not apply to any **occurrence** that is covered under **Excess Liability Insurance—Personal Injury.**

### Losses We Cover Under Excess Liability Insurance—Bodily Injury And Property Damage—Section 1

**We** will cover an **occurrence** arising only out of:

1. Personal activities of an **insured person.**

010 088 054
220711S007556
PROR24CA20220712000094804A-000059-007-0-02-00

2. A volunteer civic service which an **insured person** performs without pay, for a not-for-profit corporation and which is not a function of that person's **business**.

   Payment or reimbursement for reasonable expenses actually incurred by the **insured person** in connection with the volunteer civic service is not considered pay.

3. The duties of **your** domestic employees who are not subject to Workers' Compensation Laws.

### Amounts We Pay—Section 1

**We** will pay only that amount of damages which exceeds the sum of:

1. the limits specified in this policy for the Required Underlying Insurance under which the **occurrence** is a covered loss; plus
2. the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

However, in no event shall **we** pay any amount above **our** limit of liability. **We** will not pay the difference between the limits specified in this policy as Required Underlying Insurance and any lower limits actually in effect.

## Section 2

Under Section 2 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising only out of:

1. a covered **occurrence** for which Required Underlying Insurance is not required by this policy; or
2. a covered **occurrence** for which **you** are required by this policy to maintain Required Underlying Insurance but there is no Required Underlying Insurance in effect at the time of the **occurrence**.

**We** will not pay any punitive or exemplary damages, fines and penalties.

### Losses We Cover Under Excess Liability Insurance—Bodily Injury And Property Damage—Section 2

**We** will cover an **occurrence** arising only out of:

1. Personal activities of an **insured person**.
2. A volunteer civic service which an **insured person** performs without pay, for a not-for-profit corporation and which is not a function of that person's **business**.

   Payment or reimbursement for reasonable expenses actually incurred by the **insured person** in connection with the volunteer civic service is not considered pay.

3. The duties of **your** employees who are not subject to Workers' Compensation Laws.

### Amounts We Pay—Section 2

**We** will pay only that amount of damages which exceeds the sum of:

1. the limits specified in this policy's Policy Declarations for Required Underlying Insurance required by this policy for the **occurrence** even though such Required Underlying Insurance was not in effect at the time of the **occurrence**; plus
2. the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

However, if no other insurance is required and no other insurance applies to the **occurrence**, **we** will pay only those amounts which exceed the **retained limit**, up to the applicable limit of liability shown on the Policy Declarations.

In no event shall **we** pay any amount above **our** limit of liability.

### Exclusions—Losses We Do Not Cover Under Excess Liability Insurance—Bodily Injury And Property Damage—Section 2

**Excess Liability Insurance—Bodily Injury And Property Damage—Section 2** will not apply:

1. To any **occurrence** covered under **Excess Liability Insurance—Bodily Injury And Property Damage—Section 1** or under **Excess Liability Insurance—Personal Injury**.
2. To any **occurrence** arising out of any act or failure to act by any person in performing functions of that person's **business**.
3. To any **occurrence** arising out of a **business** or **business property**.
4. To any **bodily injury** or **property damage** sustained by any person as a result of an **occurrence** directly or indirectly related to the employment of this person by any **insured person**.
5. To any **occurrence** arising out of the occupancy as an operator or passenger of any land vehicle or watercraft while being used in any way directly related to an **insured person's business** or **business property**.

   This exclusion does not apply to an **insured person's** use of an automobile, motorcycle or recreational motor vehicle to transport people in the course of the **insured person's business** activities, provided such vehicles:
   a) are not used to transport persons or property for a fee; and
   b) if not owned by an **insured person**, are not available or furnished for the regular use of an **insured person**.

6. To any **occurrence** arising out of:
   a) the ownership;
   b) maintenance; or
   c) use (including loading or unloading);
   of any aircraft by any **insured person**.

   This exclusion does not apply to the incidental use of an aircraft by **you** or an **insured person** as a passenger.

7. To **bodily injury** to an **insured person**.
8. To **property damage** to any:
   a) property owned by an **insured person**; or
   b) property owned by others which an **insured person** agreed to insure or for which an **insured person** agreed to be responsible.



9. When an **insured person** or that person's insurers may be held liable under any of the following laws:
   a) workers' compensation;
   b) occupational disease;
   c) unemployment compensation;
   d) disability benefits; or
   e) any other similar law.

10. When an **insured person**, as an employer, has failed to provide the security required under a workers' compensation law or occupational disease law for benefits to that person's employees.

11. To **bodily injury** to:
    a) any employee, other than a domestic employee who is not subject to workers' compensation laws; or
    b) any person arising out of corporal punishment administered by or at the direction of an **insured person**.

12. To **bodily injury** or **property damage** for which an **insured person** is also covered under a nuclear energy liability policy, even if the limits of that policy have been exhausted.

13. To **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This includes any **bodily injury** or **property damage** arising out of a violation of a penal law or ordinance committed by or with the consent or knowledge of an **insured person**. This exclusion applies even if:
    a) such **insured person** lacks the mental capacity to govern his or her conduct;
    b) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
    c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

    This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of, a crime.

14. To any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

    **We** will not apply this exclusion to **bodily injury** which results from:
    a) such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is sudden and accidental; or
    b) heat, smoke or fumes from a **hostile fire**.

15. To any **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

    **We** will not apply this exclusion to **property damage** which results from heat, smoke or fumes from a **hostile fire**.

16. To any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

17. To any loss, cost or expense arising out of any request, demand, or order that any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of any type of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

18. To any **bodily injury** or **property damage** arising from any contract or agreement, whether written or oral.

19. To any claim in which an **insured person** has concealed or misrepresented any material fact or circumstance.

20. To any **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

21. To any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which, in whole or in part arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

22. To any **bodily injury** or **property damage** arising from any use, sale, manufacture, delivery, distribution, or possession of any controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. sections 811 and 812. This exclusion does not apply to use of prescription drugs if such prescription drugs are used by the person for whom they were prescribed by a licensed medical provider.

23. To any **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from insects or rodents.

24. To any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from insects or rodents.

25. To any **bodily injury** or **property damage** occurring while **your** watercraft is in any sanctioned race, speed or jumping contest. This exclusion does not apply when **your** watercraft is:
    a) a sailboat; or
    b) in a "predicted-log" cruise.

26. To any **bodily injury** or **property damage** arising out of the participation in any prearranged, organized or spontaneous:
    a) racing contest;

b) speed contest;
c) demolition contest;
d) stunt contest;
e) off-road contest;
f) motor vehicle performance, maneuvering, or endurance contest; or

in practice or preparation for any contest of this type.

## Section 3—Common Provisions

### Limit Of Liability

**Our** total liability under **Excess Liability Insurance—Bodily Injury And Property Damage** for damages arising out of one **occurrence** will not exceed the "each occurrence" limit shown on the Policy Declarations, regardless of the number of:

1. **insured persons**;
2. claims;
3. claimants;
4. injured persons; or
5. policies involved.

The "Annual Aggregate Limit" for **Excess Liability Insurance—Bodily Injury And Property Damage** shown on the Policy Declarations is the most **we** will pay for all damages resulting from all **occurrences** that occur during the policy period regardless of when the amounts were paid.

There will be no duplication of payments made under **Excess Liability Insurance—Bodily Injury And Property Damage—Section 1** and **Excess Liability Insurance—Bodily Injury And Property Damage—Section 2** of this policy.

### When We Pay

**We** will not begin to make payment for any damages resulting from an **occurrence** covered by this policy until **our** liability has been determined by:

1. agreement between the claimant and **us**; or
2. a final judgment against an **insured person**.

Claim for payment must be made within 12 months after determination of **our** liability. If additional claims are filed due to the same **occurrence**, payment will be made within 30 days after the **insured person** gives **us** proper proof.

### Defense We Will Provide

**We** will defend an **insured person** sued as the result of an **occurrence** covered by this policy. **We** will not defend any **insured person** against any claim for punitive or exemplary damages.

When defense is provided by the insurer providing the Required Underlying Insurance or any other liability insurance, **we** maintain the right to join in the defense of any claim or suit which may require **us** to pay.

If the **insured person** fails to maintain the Required Underlying Insurance, **we** will not defend any **insured person** for any amount of damages falling within the Required Underlying Insurance limits.

**We** may be prevented from defending an **insured person**, in any country, due to laws or for other reasons. In that event, **we** will pay any expense incurred, with **our** written consent, for the **insured person's** defense.

**We** may investigate and settle any claim or suit as **we** consider appropriate.

### Additional Payments We Will Make

In defending an **insured person**, **we** will pay the following regardless of **our** limits of liability:

1. Premiums on appeal bonds and on bonds to release attachments. **We** have no obligation to apply for or furnish these bonds.
2. Court costs for defense.
3. Interest accruing on damages awarded. **We** will pay this interest only until **we** have paid, tendered or deposited in court the amount of damages for which **we** are liable under this policy. **We** will only pay interest on the amount of damages for which **we** are liable under this policy, not exceeding **our** limits of liability.

**We** will repay an **insured person** for all reasonable expenses incurred at **our** request, arising from an **occurrence we** cover. This includes payment for actual loss of wages. **We** are not obligated to repay any expenses incurred by an **insured person** if the **insured person** takes any action or makes any payments other than for covered expenses. **Our** payment for lost wages will not exceed:

1. $150 per day; nor
2. A total of $5000 per **insured person**.

### Retained Limit

**Retained limits** vary by state. The **retained limit** that applies to this policy is determined by the state shown in the address in the Policy Declarations and the dollar amount shown below for that state.

**Retained limits** are:

1. $1000 in North Carolina and Texas.
2. $250 in all other states and the District of Columbia.

This amount applies only if:

1. **bodily injury** or **property damage** arises out of an **occurrence** that is not covered under **Excess Liability Insurance—Bodily Injury And Property Damage—Section 1**; and
2. no other insurance is required or no other insurance applies to the **occurrence**.

An **insured person** must promptly repay **us** for any amount **we** have advanced on that person's behalf which is within the applicable **retained limit**. **We** will give the **insured person** notice of any repayment due.



## Excess Liability Insurance—Personal Injury-Coverage XP

Under **Excess Liability Insurance—Personal Injury, we** will pay damages which an **insured person** becomes legally obligated to pay because of **personal injury. Personal injury** must arise from a covered **occurrence.**

**We** will not pay any punitive or exemplary damages, fines and penalties.

### Losses We Cover Under Excess Liability Insurance—Personal Injury

**We** will cover an **occurrence** arising only out of:

1. Personal activities of an **insured person.**
2. A volunteer civic service which an **insured person** performs without pay, for a not-for-profit corporation and which is not a function of that person's **business.**

   Payment or reimbursement for reasonable expenses actually incurred by an **insured person** in connection with the volunteer civic service is not considered pay.

### Exclusions—Losses We Do Not Cover Under Excess Liability Insurance—Personal Injury

This coverage does not apply:

1. To **personal injury** arising out of any act or failure to act by any person in performing functions of that person's **business.**
2. To **personal injury** arising out of a **business** or **business property.**
3. To **personal injury** sustained by any person as a result of an **occurrence** directly or indirectly related to the employment of this person by any **insured person.**
4. To **personal injury** sustained by an **insured person.**
5. To **personal injury** when an **insured person** or that person's insurers may be held liable under any of the following laws:
   a) workers' compensation;
   b) occupational disease;
   c) unemployment compensation;
   d) disability benefits; or
   e) any other similar law.
6. To **personal injury** sustained by any person arising out of corporal punishment administered by or at the direction of an **insured person.**
7. To **personal injury** arising from any contract or agreement, whether written or oral.
8. To libel, slander or defamation of character if the first injurious publication or utterance of the same or similar material was made by an **insured person** prior to the effective date of this policy.
9. To **personal injury** arising from illegal discrimination.
10. To **personal injury** that results in a claim where an **insured person** has concealed or misrepresented any material fact or circumstance.
11. To **personal injury** arising out of oral, written, or electronic publication of material, if done by, or at the direction of, an **insured person** with knowledge that the material is false.
12. To **personal injury** intended by, or which may reasonably be expected to result from the intentional acts or omissions of, any **insured person.** This exclusion applies even if:
    a) such **insured person** lacks the mental capacity to govern his or her conduct;
    b) such **personal injury** is of a different kind or degree than that intended or reasonably expected; or
    c) such **personal injury** is sustained by a different person than intended or reasonably expected.
13. To **personal injury** arising out of, or which may reasonably be expected to result from, the criminal acts of any **insured person.** This includes any **personal injury** arising out of a violation of a penal law or ordinance committed by or with the consent or knowledge of an **insured person.** This exclusion applies even if:
    a) such **insured person** lacks the mental capacity to govern his or her conduct;
    b) such **personal injury** is of a different kind or degree than that intended or reasonably expected; or
    c) such **personal injury** is sustained by a different person than intended or reasonably expected.

    This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of, a crime.
14. To **personal injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

### Limit Of Liability

**Our** total liability under **Excess Liability Insurance—Personal Injury** for damages arising out of one **occurrence** will not exceed the "each occurrence" limit shown on the Policy Declarations, regardless of the number of:

1. **insured persons;**
2. claims;
3. claimants;
4. injured persons; or
5. policies involved.

The "Annual Aggregate Limit" for **Excess Liability Insurance—Personal Injury** shown on the Policy Declarations is the most **we** will pay for all damages resulting from all **occurrences** that occur during the policy period regardless of when the amounts were paid.

### Amounts We Pay

**We** will pay only that amount of damages which exceeds the sum of:

1. the limits of liability of the underlying insurance which apply to the **occurrence**; plus

010 088 054
220711S007556
PROR24CA202207120000948O4A-000059-009-0-02-00

2. the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

If no other insurance is required or no other insurance applies to the **occurrence**, **we** will pay only those amounts which exceed the **retained limit**, up to the applicable limit of liability shown on the Policy Declarations for **Excess Liability Insurance—Personal Injury**.

In no event shall **we** pay any amount above **our** limit of liability.

### When We Pay

**We** will not begin to make payment for any damages resulting from an **occurrence** covered by this policy until **our** liability has been determined by:

1. agreement between the claimant and **us**; or
2. a final judgment against an **insured person**.

Claim for payment must be made within 12 months after determination of **our** liability. If additional claims are filed due to the same **occurrence**, payment will be made within 30 days after the **insured person** gives **us** proper proof.

### Defense We Will Provide

**We** will defend an **insured person** sued as the result of an **occurrence** covered by this policy. **We** will not defend any **insured person** against any claim for punitive or exemplary damages.

When defense is provided by the insurer providing any other liability insurance, **we** do maintain the right to join in the defense of any claim or suit which may require **us** to pay.

**We** may be prevented from defending an **insured person**, in any country, due to laws or for other reasons. In that event, **we** will pay any expense incurred, with **our** written consent, for the **insured person's** defense.

**We** may investigate and settle any claim or suit as **we** consider appropriate.

### Additional Payments We Will Make

In defending an **insured person**, **we** will pay the following regardless of **our** limits of liability:

1. Premiums on appeal bonds and on bonds to release attachments. **We** have no obligation to apply for or furnish these bonds.
2. Court costs for defense.
3. Interest accruing on damages awarded. **We** will pay this interest only until **we** have paid, tendered or deposited in court the amount of damages for which **we** are liable under this policy. **We** will only pay interest on the amount of damages for which **we** are liable under this policy, not exceeding **our** limits of liability.

**We** will repay an **insured person** for all reasonable expenses incurred at **our** request, arising from an **occurrence we** cover. This includes payment for actual loss of wages. **We** are not obligated to repay any expenses incurred by an **insured person** if the **insured person** takes any action or makes any payments other than for covered expenses. **Our** payment for lost wages will not exceed:

1. $150 per day; nor
2. A total of $5000 per **insured person**.

### Retained Limit

**Retained limits** vary by state. The **retained limit** that applies to this policy is determined by the state shown in the address in the Policy Declarations and the dollar amount shown below for that state.

**Retained limits** are:

1. $1000 in North Carolina and Texas.
2. $250 in all other states and the District of Columbia.

An **insured person** must promptly repay **us** for any amount **we** have advanced on that person's behalf which is within the applicable **retained limit**. **We** will give the **insured person** notice of any repayment due.

## Conditions

### What To Do If There Is An Occurrence, Claim Or Suit Notice

**You** must give **us** prompt written notice of any **occurrence** to which this policy may apply. **You** must also promptly give **us** all legal papers or reports relating to the **occurrence** when a claim or suit is filed against any **insured person**. **You** must also notify **your** underlying insurer.

### Assistance And Cooperation

When **we** join in defense of any claim or suit, **we** and the **insured person** will cooperate in good faith. **You** must also cooperate with **your** underlying insurer.

### Our Rights Under This Policy—Right Of Appeal

If an **insured person** or any other insurer elects not to appeal a judgment exceeding the limits of the Required Underlying Insurance, any other insurance or the **retained limit**, **we** may do so. **We** will pay the cost and interest incidental to the appeal. **We** will not be liable for more than the applicable limit shown on the Policy Declarations plus the incidental costs and interest.

### Settlement Or Defense

**We** may assume control of the settlement and **we** may assume the defense of any claim or suit against an **insured person** if:

1. The limits of any Required Underlying Insurance or any other insurance have been exhausted by payment; or
2. The insurer providing the Required Underlying Insurance or any other applicable insurance is or becomes bankrupt or insolvent within one year after the **occurrence**.

### Subrogation

When **we** pay, an **insured person's** rights of recovery from anyone else become **ours** up to the amount **we** have paid. This includes any rights to claims against any other insurer which failed in its obligation to provide insurance applying to the **occurrence**. The **insured person** must protect these rights and help **us** enforce them. **We** cannot be required to exercise these rights.



# Policy Endorsement

Policy number: 999 703 979
Policy effective date: July 9, 2022

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## California
## Personal Umbrella Policy
## Amendatory Endorsement - AS378-2

I. The **General Provisions** are revised as follows:

A. Under **Definitions Used In This Policy**, the following changes are made:

1. The definition of **bodily injury** is replaced by the following:

1. **Bodily injury** means:
   a) physical harm to the body, including sickness, disease, disability or death resulting from physical harm to the body;
   b) shock, mental anguish or mental injury.

**Bodily injury** does not include:
a) any harm resulting from:
   i) false arrest, false imprisonment, wrongful detention;
   ii) wrongful entry, invasion of rights of occupancy, wrongful eviction; or
   iii) libel, slander, humiliation, defamation of character, invasion of rights of privacy.
b) any symptom, effect, condition, disease or illness resulting in any manner from:
   i) lead in any form;
   ii) asbestos in any form;
   iii) radon in any form; or
   iv) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at any residence premises owned by an **insured person**.
c) i) any venereal disease;
   ii) herpes;
   iii) Acquired Immune Deficiency Syndrome (AIDS);
   iv) AIDS related complex (ARC); or
   v) Human Immunodeficiency Virus (HIV);

   or any related or resulting symptom, effect, condition, disease or illness related to c) i) through v) above.
d) any harm arising directly or indirectly out of the transmission of, threat of, or fear of transmission of, a communicable disease or sickness by an **insured person**.
e) any harm arising from actual, alleged, or threatened sexual harassment, sexual molestation or physical or mental abuse by an **insured person**.

2. The definition of **business** is replaced by the following:

2. **Business** means:
   a) any full- or part-time activity of any kind:
      1) arising out of or relating to an occupation, trade or profession of an **insured person**; and
      2) engaged in by an **insured person** for economic gain, including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is a **business**.
   b) the rental or holding for rental of any property by an **insured person**.

**Business** does not include:
a) volunteer civic service which an **insured person** performs without pay for a **business** which was formed and functions as a not-for-profit organization and which is not a function of the **insured person's** occupation, profession or trade;
b) the occasional rental or holding for rental of **your** residence premises for residential purposes;
c) the rental or holding for rental of a portion of **your** residence premises to not more than two roomers or boarders, provided not more than two roomers or boarders reside on the residence premises at any one time;
d) the occasional or part-time business activities of an **insured person** who is under 21 years of age;
e) an **insured person's** occupancy of an office, private school or studio located on the primary residence premises; or
f) the mutual exchange of home day care services.

3. The definition of **personal injury** is replaced by the following:

6. **Personal injury** means harm resulting from:
   a) false arrest, false imprisonment, wrongful detention;
   b) wrongful entry, invasion of rights of occupancy, wrongful eviction; or
   c) libel, slander, humiliation, defamation of character, invasion of rights of privacy.

   Fines and penalties imposed by law are not included.

4. The definition of **You** or **Your** is replaced by the following:

10. **You** or **your** means the person named on the Policy Declarations as the insured and:

010 088 054
220711S007556
PROR24CA20220712000094804A-000059-010-0-02-00

a) that person's resident spouse; or
b) a party who has established with that person a registered domestic partnership under California state law if a resident of the same household.

B. The **Cancellation** provision is replaced by the following:

**Cancellation**

**Your** Right to Cancel:

**You** may cancel this policy at any time. To do so, **you** must notify **us**, stating the future date **you** wish to stop coverage.

**Our** Right to Cancel:

**We** may cancel this policy by mailing notice to **you** at the address shown on the Policy Declarations. Mailing the notice is proof of notice. Coverage will stop at the date and time stated in the notice. If **we** cancel for non-payment of premium, the date of cancellation will be at least ten days after the date of mailing. Otherwise, **we** will give **you** 30 days notice.

A refund, if due, will be in proportion to the time **your** policy has been in effect. Cancellation will be effective even if the refund is not made immediately.

**Our** Right Not to Continue or Renew:

**We** have the right not to continue or renew the policy beyond the current policy period. **We** may non-renew this policy for any reason permitted by law including, but not limited to, **your** failure to maintain with Allstate the Required Underlying Insurance required by this policy. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 75 days before the end of the policy period. If **we** fail to mail **you** notice at 75 days before the end of the premium period, **your** policy will remain in effect for 75 days from the date the notice is mailed. **Our** mailing the notice of non-renewal to **you** will be deemed to be proof of notice.

Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

C. The following provisions are added:

**Conditional Reinstatement**

If **we** mail a cancellation notice because **you** did not pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **we** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

**MEXICO COVERAGE WARNING**

Unless **you** have automobile or aircraft insurance written by a Mexican insurance company, **you** may spend many hours or days in jail if **you** have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of **your** automobile or aircraft. (California Insurance Code, Section 11580.6).

**What Law Will Apply**

This policy is issued in accordance with the laws of California and covers risks principally located in California. Subject to the following paragraph, the laws of California shall govern any and all claims or disputes in any way related to this policy.

If a covered loss, or any other **occurrence** for which coverage applies under this policy happens outside California, claims or disputes regarding that covered loss or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**

Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in California. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in California, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss, or any other **occurrence** for which coverage applies under this policy, happens outside California, lawsuits regarding that covered loss or any other covered **occurrence** may also be brought in the judicial district where that covered loss or any other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

II. In **Required Underlying Insurance**, the **Watercraft** provision is replaced by the following:

**Watercraft**

1. **You** must maintain at least the Required Underlying Insurance amount listed on the Policy Declarations for Bodily Injury Liability coverage and Property Damage Liability coverage for each watercraft owned by an **insured person** which:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;



c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, hovercraft, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

2. **You** must maintain at least the Required Underlying Insurance amount listed on the Policy Declarations for each watercraft **you** own which is shorter in length and lower in horsepower than those in 1 above.

**You** may maintain this coverage as part of **your** Comprehensive Personal Liability, Homeowners Insurance or similar package policy.

III. In **Excess Liability Insurance—Bodily Injury and Property Damage Coverage XL**, the following changes are made:

A. The **Losses We Cover Under Excess Liability Insurance —Bodily Injury and Property Damage—Section 1** provision is replaced by the following:

**Losses We Cover Under Excess Liability Insurance—Bodily Injury and Property Damage - Section 1**
**We** will cover an **occurrence** arising only out of:

1. Personal activities of an **insured person**.

2. A volunteer civic service which an **insured person** performs without pay, for a not-for-profit corporation and which is not a function of that person's **business**.

   Payment or reimbursement for reasonable expenses actually incurred by the **insured person** in connection with the volunteer civic service is not considered pay.

3. The duties of **your** domestic employees who are not subject to Workers' Compensation Laws.

**We** will not cover any **occurrence** arising out of a **business** or **business property**. However, **we** will not apply this exclusion to damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising out of an **occurrence** that is a covered loss under the bodily injury liability or property damage liability coverage(s) of an Allstate Ride For Hire endorsement in effect and applicable at the time of the loss.

B. Under **Exclusions—Losses We Do Not Cover Under Excess Liability Insurance—Bodily Injury and Property Damage - Section 2**, the following changes are made:

1. Exclusion 18 is replaced by the following:

   18. To any liability an **insured person** assumes arising from any contract or agreement.

2. The following exclusions are added:

   - To **property damage** arising directly or indirectly out of the transmission of, threat of, or fear of transmission of, a communicable disease or sickness by an **insured person.**
   - To **property damage** arising from actual, alleged, or threatened sexual harassment, sexual molestation, or physical or mental abuse by an **insured person.**

IV. In **Excess Liability Insurance—Personal Injury Coverage XP**, under the **Exclusions—Losses We Do Not Cover Under Excess Liability Insurance—Personal Injury** provision, the following changes are made:

A. Exclusion 7 is replaced by the following:

   7. To any liability an **insured person** assumes arising out of any contract or agreement.

B. The following exclusions are added:

   - To **personal injury** arising directly or indirectly out of the transmission of, threat of, or fear of transmission of, a communicable disease or sickness by an **insured person.**
   - To **personal injury** arising from actual alleged or threatened sexual harassment, sexual molestation, or physical or mental abuse by an **insured person.**

All other policy terms and conditions apply.

---

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## California
## Paperless Disclosure - AU14943

This disclosure form applies to policyholders who have elected to conduct business with Allstate electronically.

The option to transact business electronically with Allstate and its affiliate companies is voluntary. Records which may be delivered to you electronically upon your consent to electronic delivery include all documents, notices and correspondence related to your insurance policy, premium payments (billing) and claims. You can unenroll your policies from electronic delivery, or update your email address on file, by changing your paperless settings/contact information in your Allstate account accessible via www.allstate.com/myaccount or by calling 1-800-ALLSTATE.

---

010 088 054
220711500 7556
PRO R24CA20220712000094804A-000059-011-0-02-00

## Important notices

Policy number: 999 703 979
Policy effective date: July 9, 2022

## POLICY PROVISIONS: Rates, Policy Forms and Payment of Premiums:

Applicable only with respect to policies issued on a continuous basis.

1. The rates and policy forms in effect for the company upon the inception date of the insurance evidenced hereby, and upon each successive anniversary date, shall apply.
2. The phrase "Policy Period" as used in the policy shall be deemed to mean that period of time while the applicable coverage of the policy is in force.
3. The named insured shall pay the required premium in advance of each successive premium period, and upon notice of interim amendments.

**IMPORTANT NOTICE**
**CONCERNING THE INSURANCE YOU MUST MAINTAIN**
**(Not a part of the Policy)**

Please read the following provisions of the policy carefully:

(1) Required Underlying Insurance

It establishes the types of insurance and the limits you must maintain.

If, during the policy period, additional liability exposures exist, check the list of Required Underlying Insurance on the policy declarations and secure any needed underlying coverage and limits.

In the event that you fail to maintain the Required Underlying Insurance you may be required to personally incur or expend substantial sums of money for your legal defense and for payment of damages, and with respect to which Allstate has no obligation to pay or provide reimbursement to you.

(2) Retained Limits

It identifies the amount of any damages an Insured must pay for any occurrence.

(3) In the event that additional exposures are acquired after the issuance of this policy, please notify Allstate of the additional exposure as soon as practicable.

None of the terms and conditions of the policy are modified by this Important Notice.

**XC3621**

## Important Surcharge Information

Your premium may include a state-required surcharge. This occurs when the California Guarantee Association charges Allstate for a share of California consumer insurance claims left unpaid by other insurance companies that have gone out of business. State law requires all insurance companies in California to recover these charges by surcharging their customers.

If you have questions regarding this surcharge, or any aspect of your policy or coverage, please contact your Allstate agent or the nearest Allstate office for personal assistance.

**X3196**

## If You Have a Problem with Your Insurance

**Please contact your Allstate representative if you have any questions or concerns about your insurance. If a problem arises that you and your Allstate representative are unable to resolve satisfactorily, please call or write to:**

**Allstate Customer Service**
**PO Box 660598, Dallas, TX 75266-0598**
**1-800-ALLSTATE℠ (1-800-255-7828)**

**If the problem remains unresolved, you may contact the California Department of Insurance at:**

**Consumer Services Division**
**California Department of Insurance**
**300 South Spring Street, Los Angeles, CA 90013**
**Consumer Hotline: 1-800-927-4357**
**Website:**
**http://www.insurance.ca.gov/01-consumers/101-help/index.cfm**

**Please contact the Department of Insurance only if you have been unable to satisfactorily resolve the problem with your Allstate representative and with Allstate.**

**X3380-6**

## How We Compensate Our Agencies

The company listed below uses local agencies to assist customers with their insurance decision-making process by providing customers with information and high quality service. These agencies provide numerous services to customers on the company's behalf. Agencies are paid a commission by the



Important notices
Policy number: 999 703 979
Policy effective date: July 9, 2022

Page 2 of 2

company for selling and servicing the company's insurance policies and may be eligible to receive additional compensation and rewards based on performance.

Allstate Insurance Company

**X72006-1**

010 088 054
220711S007556
PROR24CA20220712000948D4A-000059-012-0-02-00